## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REBECCA L. WOODS,         )
          )
    **Plaintiff,**     )
          )
       **v.**      )
          ) Civil Action No. 06-1460(HHK)
STEPHEN L. JOHNSON, Administrator, )
 U.S. Environmental Protection Agency, )
          )
    **Defendant.**    )
_____)

### DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, Stephen L. Johnson, Administrator, U.S. Environmental Protection Agency

("EPA"), answers Plaintiff's Complaint as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Defendant responds to the numbered Paragraphs of the Complaint as follows:

1.    This Paragraph consists of Plaintiff's characterization of this action and

jurisdictional statement to which responses are not required.  To the extent that the Paragraph is

deemed to contain allegations of fact, they are denied.

<u>Jurisdiction</u>

2.    This Paragraph consists of Plaintiff's jurisdictional statement to which no

response is required.  To the extent that the Paragraph is deemed to contain allegations of fact,

Defendant admits, upon information and belief, that Plaintiff has exhausted her administrative

remedies.  Defendant lacks sufficient knowledge to either admit or deny Plaintiff's assertion

concerning her receipt of EPA's Final Agency Decision.

<u>Venue</u>

3.      This Paragraph consists of Plaintiff's statement concerning venue to which no response is required.

<u>Parties</u>

4.      Defendant lacks sufficient knowledge to admit Plaintiff's country and/or state of citizenship, although Defendant does admit that Plaintiff has represented herself to be a United States citizen, as well as a resident of Virginia.  Defendant lacks sufficient knowledge to admit Plaintiff's age and date of birth, although Defendant admits that his records are consistent with Plaintiff's representations.  Defendant admits Plaintiff's representations concerning her EPA tenure, including its duration, the identity of the office in which she has worked since 1994, and the title of the position that she has encumbered since 1987.

5.      Defendant admits that Stephen L. Johnson is the Administrator of EPA; that EPA is an independent agency within the Executive Branch of the United States Government; that EPA has at all times since 1995 employed more than 500 employees; and that Mr. Johnson may only be sued in the instant litigation in his official capacity.  To the extent alleged, Defendant denies that Mr. Johnson is responsible for, played any role in, or had any knowledge of any of the personnel actions cited by Plaintiff in the instant litigation.

<u>Statement of Facts</u>

6.      Defendant lacks sufficient knowledge to admit Plaintiff's age, although Defendant admits that his records are consistent with Plaintiff's representations.  Defendant admits Plaintiff's assertions about her tenure, title, and grade level.  Defendant further admits that, for some considerable time, and certainly at all times relevant to the instant litigation, Plaintiff has

2

made Defendant aware of her desire to be promoted to the GS-14 level.  Defendant also admits

that, to date, Plaintiff has not been so promoted.   To the extent alleged, Defendant denies that

Plaintiff's employment history, vis-a-vis the growth of her duties, the nature of her evaluations,

and the numerosity of her awards, is more impressive  than the histories of the GS-14 promotees,

whose advancement Plaintiff challenges in the instant litigation.

7.      Admitted as to all assertions, with the averment that, incident to the 1994

reorganization, not all of the Office of Compliance Monitoring ("OCM") was absorbed into the

Office of Enforcement, Toxics, Pesticide Enforcement Division ("TPED"); some components of

OCM became part of the Office of Compliance.

8.      Admitted, with the averment that TPED's activities also include a small part of

the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").

9.      Defendant admits the allegations in this Paragraph, but avers that the individuals

whose promotions Plaintiff challenges were perceived as better qualified than Plaintiff and that

TPED was limited to two promotions.

10.      Defendant admits that in 1990 Gerald Stubbs, Plaintiff's immediate supervisor at

that time, selected her to serve in the capacity of a team leader and added language to Plaintiff's

Position Description ("PD") which reflected such assignment.  Defendant denies that Plaintiff

served in a team leader capacity beyond the time of the Office of Enforcement and Compliance

Assurance ("OECA") reorganization in 1994 that resulted in OCM's discontinuation.

Defendant admits that as a team leader Plaintiff would have been responsible for

reviewing the work of and providing technical guidance to members of her team.  Defendant

further admits that, for a period of time in the 1991 - 1994 time frame, Brian Dyer served on

Plaintiff's team. Defendant denies that Tony Ellis ever did so. Defendant admits that Messrs. Dyer and Ellis are males; that both are younger than Plaintiff; that both are Environmental Protection Specialists (also referred to as "EPS"); and that both were OCM employees under Gerald Stubbs' supervision during the 1991 - 1994 period.

Defendant denies that Plaintiff made the decision to hire Mr. Dyer and lacks sufficient knowledge to admit or deny that she played any role in his hiring process.

Defendant admits that during Plaintiff's tenure as a team leader, Gerald Stubbs asked her, on occasion, in his absence to serve as the Acting Branch Chief. Defendant avers that, when Mr. Stubbs was absent, he, with at least equal frequency, asked the other team leader under his supervision to act as Branch Chief in his stead. Defendant further avers that Plaintiff's stints as the Acting Branch Chief under Mr. Stubbs were invariably of a very limited duration.

Defendant lacks sufficient information to admit or deny Plaintiff's assertion that she was "at one time asked to serve as Acting Division Director." Defendant avers, however, that during the Thanksgiving and/or Christmas holiday season, in particular, it would not be unheard of for an organizational component's management ranks to be depleted on a specific day. In such a case, in the absence of a Division Director, a Deputy Division Director, and Branch Chiefs, a team leader or another senior staff member might be designated to act as a Division Director. While Defendant has no knowledge of Plaintiff ever having served as the Acting Division Director, to the extent that she might have done so, it would have been on a day when the rest of the Division's managerial hierarchy were absent or deployed further up the chain of command.

Defendant admits that the 1994 reorganization that created TPED ended Plaintiff's designation as a team leader. Defendant lacks sufficient knowledge to admit or deny that

4

Plaintiff served as a project Team Leader in TPED subsequent to the reorganization. In fact, Defendant asserts that he is not familiar with what the project Team Leader designation signifies.

Defendant lacks sufficient knowledge to admit or deny that Plaintiff was working at the GS-14 level in 1995.

Defendant denies that, Gerald Stubbs, on his own initiative, ever recommended that Plaintiff be promoted to the GS-14 level and Defendant avers as follows in that regard: In approximately 1995, the then TPED Division Director, Jesse Baskerville, asked all of his GS-13 non-attorney personnel who had the requisite time in grade to qualify for a GS-14 (i.e., had GS-14 promotion eligibility) to prepare a written justification supporting a promotion to the GS-14 level. Such justifications were to be produced to the eligible employees' Branch Chief for a pro forma endorsement. The purpose of this exercise was to forward for promotion consideration to the Director of the Office of Regulatory Enforcement every time-in-grade eligible TPED non-attorney GS-13. Defendant avers that, incident to this exercise and as required by Mr. Baskerville (Mr. Stubbs' immediate supervisor), Mr. Stubbs "recommended" Plaintiff -- as well as every other non-attorney promotion eligible GS-13 under his supervision -- for a promotion in 1995.

Defendant admits that Plaintiff did not receive a promotion at the time of such "recommendation" and asserts that no other TPED non-attorney GS-13 did either. Defendant admits that the absence of promotions for such personnel was based on internal OECA limitations on the number of non-attorney GS-14 employees that the office was willing to support.

5

11.      Defendant admits that, early in TPED's existence, the Division implemented a partner system under which an attorney and a non-attorney EPS were paired together to work within a specific regulatory area.  Defendant further admits that Plaintiff was paired with James Handley and worked with him on Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") enforcement (one small part of FIFRA 6(c)(2)) and Asbestos Hazard Emergency Response Act ("AHERA") Toxic Substance Control Act ("TSCA") matters.  Defendant also admits that relatively late in her tenure as a direct report to Gerald Stubbs, Plaintiff began performing Emergency Planning and Community-Right-to-Know Act ("EPCRA")  work in a pairing with Tom Marvin.  Defendant admits that Plaintiff obtained work experience and acquired technical knowledge in each of the three statutory programs enforced by TPED.  Defendant denies that Plaintiff served as a national expert for EPA in TSCA, FIFRA, and EPCRA.  Defendant further denies that Plaintiff's level of expertise and contributions to these three programs exceeds those of either Tony Ellis or Brian Dyer.

12.      Defendant denies that EPCRA 313 was reassigned to the Eastern Branch of TPED in 2000 and avers that that subject area was within the Eastern Branch from TPED's creation in 1994.  Defendant admits that in 2000 Plaintiff transferred from the Western to the Eastern Division of TPED and commenced to be supervised by Carl Eichenwald, the Eastern Division Branch Chief.  Defendant avers that Plaintiff's reassignment took place incident to a general restructuring of TPED to better align Divisional personnel under the Branch Chief responsible for an employee's principal area of responsibility, which in Plaintiff's case was EPCRA 313 activities.  Defendant admits that Mr. Handley resigned and that, with respect to Plaintiff's AHERA program responsibilities subsequent thereto, Plaintiff was without an attorney partner.

6

Defendant further admits that Mr. Marvin, to whom Plaintiff was partnered with respect to EPCRA 313 program responsibilities, also resigned, but Defendant denies that, subsequent to Mr. Marvin's resignation, the Eastern Branch/Plaintiff had EPCRA 313 program responsibilities. Defendant further avers that, after Mr. Marvin's resignation, the Eastern Branch's AHERA program activities were limited. Defendant avers that Mr. Eichenwald was aware of Plaintiff's unpartnered situation, but chose not to assign another attorney to partner with her. Defendant asserts that, given the workload in the Eastern Branch, the complexity of the legal issues that arose in that Branch, and the attorney resource constraints that it confronted, Mr. Eichenwald's decision not to partner Plaintiff with an attorney was a reasonable operational judgment designed to maximize the Eastern Branch's productivity. Defendant admits that Messrs. Dyer and Ellis, during the time frame when Plaintiff was functioning without an attorney partner, did handle national level programs in partnership with a lawyer.

13.     Defendant admits that Plaintiff, throughout her tenure in the Eastern Branch, has made Mr. Eichenwald aware of her desire to be promoted to the GS-14 level. Defendant lacks sufficient knowledge to say with precision when Plaintiff spoke to Mr. Eichenwald about the possibility of her promotion, but he asserts that Plaintiff first raised the issue with Mr. Eichenwald early in her tenure in the Eastern Branch. Defendant further asserts that when the matter of buyouts became public knowledge late in calendar year 2003 and that raised the prospect of GS-14 positions possibly becoming available in TPED, Plaintiff spoke to Mr. Eichenwald again about her interest in being promoted.

Defendant lacks sufficient knowledge to admit or deny that Plaintiff spoke of an "open application process," at the times identified in her Complaint, but Defendant admits Plaintiff did

ask Mr. Eichenwald, incident to her interest in being promoted, about a process entailing an announcement and applications. Defendant asserts that Plaintiff made it clear to Mr. Eichenwald that she wanted to be fairly considered for any GS-14 positions that might become available.

Defendant lacks sufficient knowledge to admit or deny the number of times that Plaintiff claims to have spoken to Ann Pontius concerning promotions. Defendant asserts that Plaintiff did speak to Ms. Pontius in that regard and that Plaintiff made it clear that she wanted to be fairly considered for any GS-14 positions that TPED might fill.

14.    Defendant admits that TPED management, late in 2003, advised the Office Director of the Office of Regulatory Enforcement (now "OCE") that Brian Dyer and Tony Ellis were the two Divisional non-attorney GS-13s most deserving of promotion. Defendant admits that, at the time TPED management conveyed such opinion, Defendant's personnel records reflected that Plaintiff was 54; Brian Dyer was 36; and Tony Ellis was 39 and that Messrs. Dyer and Ellis were GS-13 Environmental Protection Specialists.

Defendant denies the third sentence of this Paragraph to the extent that Plaintiff is alleging that TPED management acted contrary to any law or regulation in connection with its internal appraisal process that resulted in Messrs. Dyer's and Ellis' names being presented to the Office Director for GS-14 promotion consideration. Thus, Defendant denies Plaintiff's allegation that Messrs. Dyer or Ellis were the beneficiaries of any improper "preselection" process. Defendant further denies that TPED or OCE were required under applicable civil service regulations or pursuant to EPA's own Human Resources guidelines to post a vacancy announcement or engage in any other formalized selection process.

Defendant denies the fourth sentence of this Paragraph, and as to the fifth sentence, avers that TPED's managers caucused among themselves and determined that Brian Dyer and Tony Ellis were the Division's two GS-13 Environmental Protection Specialists most deserving of a promotion to the GS-14 level. Defendant admits that Carl Eichenwald, incident to such caucus process and in his capacity as the Acting TPED Division Director in Ann Pontius' absence, communicated to Kia Logan, Leader of OCE's Resource Management Team, on behalf of the OCE Office Director, Walker Smith, that Messrs. Dyer and Ellis were the two TPED non-attorney nominees for a GS-14 promotion. Defendant further avers that Ms. Smith endorsed promoting TPED's nominees and that both Messrs. Dyer and Ellis were promoted to the GS-14 level.

15.     Defendant admits that, prior to it becoming public knowledge that Messrs. Dyer and Ellis had been chosen as the TPED GS-14 promotees, and sometime in the first two months of 2004, Mr. Eichenwald, in a private meeting with Plaintiff, advised her that she was not selected for a GS-14 promotion. Defendant asserts that Mr. Eichenwald informed Plaintiff of the promotions because he believed that it would be preferable for such information to be conveyed by Plaintiff's supervisor.

Defendant lacks sufficient knowledge to admit or deny that Mr. Eichenwald, at such time, revealed the reasoning behind Messrs. Dyer's and Ellis' selection. Defendant denies that the selection decision was made as characterized by Plaintiff, with Mr. Eichenwald choosing Mr. Dyer and Mr. Stubbs opting for Mr. Ellis. Defendant asserts that the selection of Messrs. Dyer and Ellis was a collaborative process in which the entirety of TPED management participated, and that the selection was by consensus.

16.    Defendant admits that Mr. Stubbs prepared a written justification for Mr. Ellis' promotion and that Mr. Eichenwald prepared such a justification for Mr. Dyer, after the OCE Office Director, Walker Smith, had verbally endorsed these two individual's accretion of duties promotions.  Defendant asserts that such justifications were a necessary predicate for the Office of Human Resources ("OHR") to concur that such promotions were appropriate, and that, until OHR so concurred, Messrs. Dyer and Ellis remained in a GS-13 status.

Defendant denies that the accretion of duties justifications prepared by Messrs. Stubbs and Eichenwald were "phony" or in any way misrepresented the quality and quantity of Messrs. Dyer's and Ellis' work.  Defendant admits that Ms. Smith signed the written justifications, which was a necessary prerequisite to their being submitted to the OHR.  Defendant denies that the written justifications failed to comply with the EPA Human Resources policy bulletin on accretion of duties promotions or that the promotion process at issue in the instant litigation was contrary to general civil service requirements.  Defendant avers that the fact that OHR endorsed Messrs. Dyer's and Ellis' accretion of duties promotions is compelling evidence that OCE conducted the promotion process at issue in an appropriate and entirely lawful manner.

17.    Defendant admits that the top career ladder level for an Environmental Protection Specialist at EPA is a GS-13.  Defendant further admits that promoting an EPS to a GS-14 is a promotion above the career ladder.  Defendant also admits that promotions above the career ladder are not automatic and that EPA has issued merit promotion guidelines, which address such promotions.  Defendant denies that, with respect to the promotion process at issue here, i.e., the one that led to Messrs. Dyer and Ellis being advanced to the GS-14 level, OCE, TPED, or any other component of EPA failed to adhere to the governing laws, regulations, or guidelines,

10

including requirements detailed in the EPA Merit Promotion Manual.  Defendant further denies

that the upper management of TPED has, in any matter germane to the instant litigation, acted

mendaciously or in other than a straightforward, honest, and upright manner.

18.     Defendant denies that Messrs. Dyer and Ellis were notified of their promotions in

calendar year 2003.  Defendant asserts that Walker Smith may have decided in 2003 to forward

these individuals' names to OHR with the recommendation that they be awarded accretion of

duties promotions, but that it was not until she had forwarded to OHR Messrs. Stubbs' and

Eichenwald's written justifications and had received back from OHR that office's concurrence,

that Messrs. Dyer and Ellis were advised of their promotions.  Defendant further denies that

Messrs. Dyer and Ellis were informed of their promotions any time prior to February 2004.

Defendant admits that Mr. Eichenwald informed Plaintiff of her non-promotion during

her annual performance appraisal meeting in February 2004.  Defendant lacks sufficient

knowledge to admit or deny that Mr. Eichenwald, at such time, revealed the reasoning behind

Messrs. Dyer's and Ellis' selection.  Defendant denies that Mr. Eichenwald has ever made any

false  representations to Plaintiff concerning the promotion process.

19.     Defendant denies that Mr. Eichenwald has made inappropriate references to

Plaintiff's age and sex.  Defendant asserts that Mr. Eichenwald is averse to a process whereby

promotion aspirants of whatever sex and age, with whose strengths and weaknesses he is

intimately familiar, are required to parade their qualifications before him.  Defendant asserts that

such parading is what Mr. Eichenwald labeled a "beauty pageant," and that by this reference he

intended no sex or age connotations whatsoever.  Defendant lacks sufficient knowledge to admit

or deny that he used the "beauty pageant" expression during Plaintiff's first meeting with him as

11

her supervisor, but Defendant admits that Mr. Eichenwald has used this expression with Plaintiff in the context noted above.

Defendant admits that Mr. Eichenwald did state to Plaintiff that she and another employee were from a different era than their less senior colleagues. Defendant lacks sufficient knowledge to admit or deny that Mr. Eichenwald employed the precise language quoted by Plaintiff in Paragraph 19 of her complaint but admits that Mr. Eichenwald complimented Plaintiff on her work ethic.

Defendant admits that Mr. Eichenwald has advised Plaintiff that she has a habit of relying more on his direction and oversight than some of his other subordinates. Defendant lacks sufficient knowledge to admit or deny that Mr. Eichenwald ever suggested that this practice on Plaintiff's part was a function of her age or sex.

Defendant denies that Mr. Eichenwald has ever behaved in an inappropriate manner to a third party's insulting comment to Plaintiff.

20.    Defendant denies the allegations in this Paragraph except to admit that Mr. Eichenwald once published an e-mail on a day in which three of his male subordinates were absent, that included the quote attributed to him in the concluding sentence of this Paragraph. Defendant denies that this e-mail, which was intended to be facetious, and whose language was from a popular contemporary movie, reflects any age or sex bias on Mr. Eichenwald's part.

21.    Defendant lacks sufficient information to admit or deny the precise timing of Plaintiff's initial EEO contact in connection with her non-selection claim at issue in the instant litigation. Defendant admits that the EEO counselor's report, which is part of the Report of Investigation, reflects that Plaintiff contacted the Office of Civil Rights on February 18, 2004.

12

Defendant admits that an EEO counselor spoke to Mr. Eichenwald during the informal resolution process.  Defendant also admits that, subsequent to the unsuccessful conclusion of the informal resolution process, Plaintiff submitted an application to Mr. Eichenwald requesting the right to work from home on a specific day each week under "Flexiplace."

Defendant denies that the application was for a "permanent *leave* day," and asserts that Plaintiff requested the right to work from home on the same particular day each work week. Defendant admits that Plaintiff, as a member of the American Federation of Government Employees' bargaining unit, was entitled, under EPA's Flexiplace program, to work from other than her official work station one day a week, provided that her work was portable.

Defendant admits that, at the time Plaintiff submitted her request, other TPED personnel, including some in Mr. Eichenwald's Branch, had been authorized, on a permanent, as opposed to episodic, basis to work one day a week from an alternative location.  Defendant also admits that Mr. Eichenwald, prior to Plaintiff's request for a permanent Flexiplace arrangement, had allowed Plaintiff to work from home on an episodic basis.  Defendant further admits that EPA's written Flexiplace procedures contemplate a supervisor making a decision on a Flexiplace request within fifteen days of his receipt of such request, and that Mr. Eichenwald did not render a decision in such time frame.

Defendant admits that Plaintiff sent e-mails to Mr. Eichenwald dated May 20, 2004, and June 3, 2004, inquiring about her Flexiplace request and that Mr. Eichenwald did not timely respond to such e-mails.  Defendant further admits that Plaintiff advised the Office of Civil Rights that she wanted her non-selection EEO complaint to be amended to include a retaliation claim, i.e., Mr. Eichenwald's alleged failure to grant her request for a permanent Flexiplace day, when she could work from home.

Defendant lacks sufficient information to admit or deny the precise timing of Plaintiff's Office of Civil Rights contact in connection with this retaliation claim. Defendant admits that the Report of Investigation reflects that Plaintiff sent a July 20, 2004, letter to the Office of Civil Rights regarding such claim.

Defendant denies that Mr. Eichenwald's delay in processing Plaintiff's Flexiplace request was motivated by any retaliatory animus. Defendant asserts that there was some confusion as to the specific weekday that Plaintiff wished to work from home; that the day she initially identified was unavailable; that the delay in processing her request was due to the crush of pressing business; and that, once Mr. Eichenwald addressed the matter, he acted quickly to grant Plaintiff's request.

22.    Defendant denies that Mr. Eichenwald was motivated by any retaliatory animus when he revealed Plaintiff's EEO efforts to her detail supervisor, and Defendant further denies that, in doing so, Mr. Eichenwald intended to jeopardize Plaintiff's chances to extend her detail. Defendant asserts that TPED did agree to extend Plaintiff's detail and that she still is serving on this detail.

Statement of Claims

Claim I - Discrimination Based on Sex/Age

22.    This Paragraph contains legal conclusions to which no response is required; to the extent that Paragraph is deemed to contain allegations of fact, Defendant denies.

23.    This Paragraph contains legal conclusions to which no response is required; to the extent that Paragraph is deemed to contain allegations of fact, Defendant denies.

24.    This Paragraph contains legal conclusions to which no response is required; to the extent that Paragraph is deemed to contain allegations of fact, Defendant denies.

Claim II - Retaliation

25.    This Paragraph contains legal conclusions to which no response is required; to the extent that Paragraph is deemed to contain allegations of fact, Defendant denies.

26.    This Paragraph contains legal conclusions to which no response is required; to the extent that Paragraph is deemed to contain allegations of fact, Defendant denies.

The remainder of this Complaint consists of Plaintiff's prayer for relief which requires no response, but to the extent a response is deemed required, Defendant denies that Plaintiff is entitled to the relief sought or to any relief whatsoever.  Defendant further avers that any award of compensatory damages for Plaintiff's claims would be subject to and limited by 42 U.S.C. § 1981a.

Defendant denies each and every allegation contained in the Complaint not specifically admitted herein.

Date: October 30, 2006              Respectfully Submitted,


                                    /s/ Jeffrey A. Taylor /dvh
                                    _____
                                    JEFFREY A. TAYLOR, D.C. BAR #498610
                                    United States Attorney



                                    /s/ Rudolph Contreras /dvh
                                    _____
                                    RUDOLPH CONTRERAS, D.C. BAR #434122
                                    Assistant United States Attorney

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District
  of Columbia, Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C. 20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-Mail: beverly.russell@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on <u>Monday, October 30, 2006</u>, service of ***Defendant's***

***Answer to Plaintiff's Complaint*** was made by the Court's Electronic Case Filing System to:

David H. Shapiro
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W., Suite 1090
Washington, D.C.  20005
dhshapiro@swickandshapiro.com


/s/ Beverly M. Russell
_____
Beverly M. Russell
Assistant U.S. Attorney