UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REBECCA L. WOODS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 06-1460(HHK) |
| | ) |
| STEPHEN L. JOHNSON, | ) |
| Administrator, | ) |
| U.S. Environmental Protection Agency, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant, Stephen L. Johnson, Administrator, U.S. Environmental Protection Agency, moves for summary judgment in this matter brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, because there are no genuine issues in dispute and Defendant is entitled to judgment as a matter of law.

Pursuant to Local Rules 7(a), (c), and (h) respectively, a memorandum of points and authorities supporting this motion, a statement of genuine issues as to which there is no genuine dispute, and a proposed order consistent with the relief requested herein are attached.

Respectfully Submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the
  District of Columbia, Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-Mail: beverly.russell@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| REBECCA L. WOODS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 06-1460(HHK) |
| | ) |
| STEPHEN L. JOHNSON, | ) |
| Administrator, | ) |
| U.S. Environmental Protection Agency, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

After an ample discovery period, the record reflects that summary judgment should be granted to Defendant in this suit brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., because there are no genuine issues in dispute and Defendant is entitled to judgment as a matter of law.

Although Plaintiff, an Environmental Protection Specialist with the Environmental Protection Agency ("EPA" or "Agency") filed suit alleging that she was subjected to discrimination based on sex and age (Year of Birth: 1957) when she was not promoted to the GS-14 level, the record demonstrates that Plaintiff's claim lacks any credible evidentiary basis. Specifically, the supervisors making the determinations on the "accretion of duties" promotions at issue here agreed that Tony

Ellis and Brian Dyer, Plaintiff's colleagues, were performing at the GS-14 level, and as such, warranted the two GS-14 promotions available to the Division. Plaintiff's first, second, and third level supervisors all agreed that, while Plaintiff performed well at the GS-13 level, she had not demonstrated a level of performance justifying a GS-14 "accretion of duties" promotion. Accordingly, because the Agency had legitimate, nondiscriminatory reasons for its promotion determinations, and there is no material issue in dispute on the matter, summary judgment should be granted in Defendant's favor and Plaintiff's claim of discrimination dismissed with prejudice.

Plaintiff's retaliation claims similarly lack merit. Although Plaintiff alleges that she was subjected to retaliation when her request to participate in the Agency's Flexiplace program was not approved in a timeframe to Plaintiff's satisfaction, such delay, although frustrating to Plaintiff, is not an adverse action for purposes of sustaining a claim under Title VII.

Plaintiff also alleges retaliation based on her immediate supervisor's disclosure that Plaintiff had filed a discrimination complaint. Plaintiff was on detail during the 2005-2006 timeframe, and the disclosure was made to Plaintiff's detail supervisor. However, Plaintiff's detail was extended which was her desire, and she subsequently received a position to her

2

liking after the detail, and thus, she suffered no tangible harm from the disclosure.  Accordingly, Defendant respectfully submits that summary judgment in its favor is warranted on Plaintiff's retaliation claims as well, and the claims should be dismissed with prejudice.

## I.    STATEMENT OF FACTS

Plaintiff began working for the EPA in 1976 in a clerical position, GS-4 level, in the Office of Noise Enforcement.  Ex. 1, Deposition of Rebecca Woods, 5:3 to 5:4; 16:5 to 16:20 (Oct. 4, 2007). She held various clerical positions with the EPA over the next two years - including in the EPA field office for Region 3 located in Crystal City, in Arlington Virginia and the Office of General Counsel - until approximately 1978 when she began working as an Information Management Assistant at the GS-5 or 6 level in the Agency's Office of Pesticide Programs.  Id. 17:5 to 18:11; 19:5 to 19:25; 22:6 to 22:11.  As an Information Management Assistant, Plaintiff was responsible for performing bibliographic searches for the Office of Pesticide Programs, and performing "some" editorial work for write-ups for the document, Pesticide Abstract.  Id. 21:6 to 21:20.  Plaintiff obtained the Information Management Position through participation in the EPA's Upward Mobility Program.  Id. 20:7 to 20:18.  The program, according to Plaintiff, provides an opportunity for EPA employees to move into

more professional level positions within the Agency.  Id. 20:13
to 20:18.

Plaintiff next held the position of Information Management
Specialist, GS-7, continuing the types of duties as those of her
previous position and additionally participating in
presentations.  Id. 22:12 to 23:15. Her role during the
presentations was to explain office functions and how the office
could serve new management and the Agency as a whole. Id. 22:12
to 23:15.  Given that her position was "career ladder," Plaintiff
was promoted non-competitively to the GS-12 level as an
Information Management Specialist.  Id. 24:3 to 24:8.

As a GS-12 Information Management Specialist, Plaintiff was
involved in data collection related to tracking new chemical
activities, and undertaking data analyses including assessing the
database's capability (i.e, its uses) and "tracking a series of
different kinds of numbers" pertaining to actions that were
developed in the office.  Id. 24:9 to 25:11.  As a GS-12
Information Management Specialist, Plaintiff also assisted in
compiling narrative and statistical information for an Agency
publication, and summarizing particular kinds of actions
undertaken(e.g., chemical reviews) including explaining the
statistical aspects of those actions. Id. 25:6 to 26:4.

Plaintiff applied for and received a GS-13 Environmental
Protection Specialist position in the Chemical Control Division

4

of the Office of Pollution, Prevention and Toxics ("OPPT") in or around 1987. Woods Depo. 26:11 to 26:21. Her duties included gathering information related to chemical reviews, planning meetings (e.g., preparing documents for a meeting based on results from a previous meeting), and for a certain period, serving as a Special Assistant to the Division Director assisting with budgeting activities. Woods Depo. 28:3 to 31:2. Plaintiff worked in the Chemical Control Division for approximately five years. Id. 29:22 to 29:25.

In 1989, Plaintiff applied for and received a GS-13 Environmental Protection Specialist Position in the Office of Compliance Monitoring. Id. 31:17 to 31:23. Gerald Stubbs served as her supervisor. Id. 31:24 to 31:26. In the Office of Compliance Monitoring, Plaintiff served as a case officer, gathering evidence and other information to determine whether there had been a violation of the Toxics Substance Control Act ("TSCA") and developing corresponding legal documents to issue a complaint. Id. 32:3 to 32:13.

In or around 1994, during a reorganization, the Office of Compliance Monitoring was absorbed by the Office of Enforcement and Compliance and Assurance ("Office of Enforcement"). Id. 37:20 to 37:24. Plaintiff worked in the Western Branch of the Toxics and Pesticides Enforcement Division ("TPED") within the Office of Enforcement. Id. 38:21 to 38:26; 40:18 to 40:23. The

Eastern and Western Branches of the Division had enforcement responsibilities for different parts of three statutues - TSCA, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), and the Emergency Planning and Community Right to Know Act ("EPCRA"). Ex. 2, Deposition of Gerald Stubbs, at 6:12 to 7:6 (Aug. 30, 2007); see also Ex. 3, Deposition of Carl John Eichenwald, 25:2 to 26:2 (Nov. 22, 2005).

After the reorganization, Mr. Stubbs continued as Plaintiff's supervisor and Plaintiff's duties essentially remained the same.  Ex. 1, Woods Depo. 37:20 to 38:14; 43:15 to 43:21.  However, in 2000, Plaintiff began working in the Eastern Branch for Carl Eichenwald.  Id. 50:14 to 50:23.  Prior to working for Mr. Eichenwald in 2000, Plaintiff had neither been supervised by nor worked on any projects with Mr. Eichenwald. Id. 53:20 to 53:26.

However, within the first year of working in the Eastern Branch, Plaintiff recollects asking Mr. Eichenwald about the possibility of a promotion and expressing an interest in having the opportunity to present her qualifications for a promotion. Id. 60:19 to 60:25; 62:1 to 62:11.  Mr. Eichenwald allegedly responded that "he didn't need a beauty pageant type scenario to determine people's qualifications."  Id.  Plaintiff never asked Mr. Eichenwald what he meant by the comment. Id. 62:3 to 62:15. In 2003, Plaintiff had a subsequent conversation with Mr.

6

Eichenwald about the possibility of a promotion to a GS-14 level. Id. 62:16 to 62:21.  Mr. Eichenwald apparently expressed the hope that the Division would receive promotion opportunities.  Id. 63:1 to 63:5.

In or around January 2004, three GS-14 positions were, in fact, made available to the Office of Regulatory Enforcement, and two were designated specifically for TPED.  Ex. 6, Sworn Statement of Ann Pontius, at 2 (Dec. 2, 2004).  Ann Pontius, Director of TPED (and Plaintiff's second line supervisor) was asked to make recommendations for promotion based on all employees at the GS-13 level. Id. at 1-2.  The promotions, referred to as "accretion of duties" promotions, were to be based on merit and an employee's demonstrated ability to successfully take on additional responsibilities at the GS-14 level.  Id. at 2.  Ms. Pontius had two openings and five eligible employees.[1]

_____

[1]Ms. Pontius started in the position of Director, TPED, in April 2002 but acted in the position for six to eight months prior to that.  Ex. 16, Declaration of Ann Pontius, 5:22 to 6:9 (Nov. 23, 2005). The first non-attorney, technical employee promoted to the GS-14 position while Ms. Pontius served in the Director position was Yvette Hellyer.  Id. 48:3 to 48:8. Prior to this promotion, in or around 2003, Ms. Pontius was given one technical GS-14 position and was asked to consider all eligible GS-13 technical staff which included, among other employees, Hellyer, Dyer, Ellis, and Plaintiff.  Id. 49:21 to 50:1; 54:22 to 55:22; 59:11 to 59:13.  As with the promotions of Messrs. Ellis and Dyer, Ms. Pontius consulted with her managers, including Carl Eichenwald, Gerry Stubbs, and Stephanie Brown, regarding the selection.  Id. 50:22 to 51:14. There were a number of group discussions of this  management team, and although Dyer and Ellis were considered the top candidates along with Hellyer, the

(continued...)

Id. She consulted with her management team including Carl Eichenwald, Gerry Stubbs, and Stephanie Brown, Associate Director.  The team discussed each employee at the GS-13 level. Id.

As part of their considerations, the management team looked at a number of factors including level of independence under which the employees operated (considered very important), quality of the work product, ability to interact with all levels of the agency, and ability to represent the office to outside constituencies. Ex. 11, Sworn Statement of Carl Eichenwald, at 2 (Dec. 3, 2004).  Tony Ellis, who worked in the Western Branch, and Brian Dyer, who worked in the Eastern Branch, were recommended for the promotions.  Ex. 6, Pontius Sworn Statement, at 2.

Mr. Dyer was selected because of his ability to work independently. Ex. 11, Eichenwald Sworn Statement, at 4.  Mr. Eichenwald stated that he likes to set objectives for staff without particular direction because, in Mr. Eichenwald's opinion, senior staff should be able map out their own plans and manage their own projects without direction from him.  Id.  Mr. Dyer did this effectively.  Id.  Mr. Dyer has what Mr. Eichenwald

---

[1](...continued)
management team ultimately came to a consensus that Ms. Helleyer should be recommended for the promotion.  Id. 53:6 to 54:20; 56:10 to 56:17.

considers to be an entrepreneurial approach to his work in that Mr. Eichenwald does not have to "go out and assign" matters to him. Id. Indeed, according to Mr. Eichenwald, Mr. Dyer managed his own program with extraordinarily little oversight from Mr. Eichenwald. Id. at 5. Mr. Eichenwald additionally noted that Mr. Dyer effectively represented the Division both within and outside the EPA and is an accomplished presenter. Id. Mr. Dyer was sent to a bilateral conference in 2003, the U.S.-Mexico Pesticide Information Exchange, and did outstanding work there. Id. Mr. Eichenwald received favorable comments from a representative from the state of Texas "who went out of his way to applaud [Mr. Dyer's] work, [and Mr. Dyer's] ability to explain complicated issue[s] well and respectfully." Id.

Ms. Pontius also noted that Mr. Dyer showed a great deal of initiative. Ex. 6, Pontius Sworn Statement, at 4. Mr. Dyer developed an initiative to help better protect U.S. borders from chemicals, and also had developed a good relationship with the Border Patrol such that the Agency knew what was coming into the country. Id. Ms. Pontius also noted that Mr. Dyer stepped in to take over the technical portion of one of the Division's biggest cases when he did not have expertise in the area and had to educate himself. Mr. Dyer also took over the position of web master. Id.

9

Ms. Pontius characterized Tony Ellis as one of the most productive employees in terms of cases. Id. at 3-4; see also Ex. 12, Memorandum from Walker B. Smith to John Peter Suarez, p. 2, Jan. 8, 2004 (noting that, in Fiscal Year 2003, Mr. Ellis had done more audit cases than any other TPED staffer). Ms. Pontius stated that Mr. Ellis helped set up a new center in Denver and all the operating procedures there. Ex. 6, Pontius Sworn Statement at 4; see also Ex. 12, Smith Memorandum re Promotion of Tony Ellis, p. 2, Jan. 8, 2004 (noting that Mr. Ellis had been "a leader in the development and implementation of the Core TSCA Enforcement Center in Denver. . .") Mr. Ellis, according to Ms. Pontius, showed a lot of initiative and did "really good work." Ex. 6, Pontius Sworn Statement, at 4.

Based on the management team's discussion, Ms. Pontius made a recommendation to Walker Smith, Office Director of the Office of Regulatory Enforcement, Office of Enforcement and Compliance and Assurance ("OECA"), that Messrs. Dyer and Ellis be promoted. Id. at 3; see also Ex. 7, Sworn Statement of Walker Smith, at 1, December 7, 2004.

As to the promotions, Ms. Smith stated that it is her practice to rely on her Division Directors, and to use her own judgment from staff presentations at weekly meetings. Id. at 3. Ms. Smith agreed with Ms. Pontius' assessment regarding the promotions. Id. Messrs. Dyer and Ellis, in Ms. Smith's opinion,

10

had taken on bigger responsibility than Plaintiff.  Id.  Ms.
Smith made the decision to promote them along with David Nielson,
a former Deputy Director.[2]  Id. at 4; see also Ex. 12, Smith
Memoranda (recommending Messrs. Ellis and Dyer for "accretion of
duties" promotions).

As for Plaintiff, Mr. Eichenwald, Ms. Pontius and Ms. Smith
had similar assessments of her work.  Mr. Eichenwald stated that
Plaintiff performed well and was successful at a GS-13 level, but
did not have the independence or representational aspects called
for at the GS-14 level.  Ex. 4, Eichenwald Sworn Statement, at 4.
Ms. Pontius stated that Plaintiff was doing solid GS-13 work but
simply was not doing GS-14 level work.  Ex. 6, Pontius Sworn
Statement at 4.  Ms. Smith also believed that, while Plaintiff

---

[2]The Agency's Merit Promotion Manual provides for promotion
of an employee above the established promotion potential without
competition when the employee's position is reconstituted at a
higher grade because of an accretion of duties and
responsibilities.  Ex. 5, HR Policy Bulletin, Office of Human
Resources and Organizational Services, Accretion of Duties, 335-
1, at 1.  Recommendations for effecting accretion of duties
promotions are submitted to the servicing Human Resources Office
which has the authority to approve or disapprove such requests.
Id. at 4. Mr. Charles H. Smith, former Supervisory Human Resource
Specialist, GS-15, with the EPA's Office of Human Resources
("OHR"), served as the OHR ultimate authorizing official for the
promotions of Messrs. Dyer and Ellis.  Ex. 17, Affidavit of
Charles H. Smith, ¶ 3 (Dec. 4, 2007).  Mr. Smith noted that,
during his thirty year tenure in OHR, it was never OHR's policy
to act as a rubber stamp for program office personnel actions.
Id. ¶ 10.  If OHR concluded that a proposed personnel action was
inappropriate, OHR staff were professionally obligated to
withhold endorsement.  Id.  Mr. Smith's endorsement of the Dyer
and Ellis "accretion of duties" promotions reflects Smith's
assessment that such actions were defensible and proper.  Id.

did good work, she did not rise to the level of taking responsibility in the way a GS-14 should. Ex. 7, Smith Sworn Statement.

The promotions of Messrs. Ellis and Dyer were effectuated in early 2004. See, e.g. Ex. 8, Position Description (Dyer). During Plaintiff's performance review in February 2004, Mr. Eichenwald informed Plaintiff that the office received two promotion positions and that Plaintiff would not receive either one of them. Ex. 1, Woods Depo. 69:24 to 70:16. Plaintiff inquired as to the reasons for her non-selection. Id. 71:7 to 71:9. Mr. Eichenwald apparently expressed two concerns, first, he did not like a work product completed by Plaintiff and, second, he stated that Plaintiff "checked in too much." Id. 71:10 to 71:14. Plaintiff never asked Mr. Eichenwald what he meant by this latter comment. Id. 72:15 to 72:22. Plaintiff did not have any subsequent conversations with Mr. Eichenwald regarding reasons for her non-selection for one of the GS-14 positions. Id. 72:23 to 73:1.

Plaintiff filed an administrative complaint of discrimination on or around March 30, 2004 alleging discrimination based on sex and age based on denial of a promotion to the GS-14 level. Ex. 9, Pl.'s Compl. Of Discrimination, March 30, 2004. By letter dated May 4, 2004, Plaintiff was informed that the following claim had been accepted

for investigation: "Whether she was discriminated against on the
basis of sex (female) and age (DOB: * * *1949) when on February
12, 2004, she learned she would not be promoted to the GS-14
grade level."[3]  Ex. 10, Letter from Ronald B. Ballard to David H.
Shapiro, May 4, 2004.

Around this same period, in April 2004, Plaintiff submitted
an application to participate in the Agency's Flexiplace program.[4]
See Ex. 11, Declaration of Carl Eichenwald, Jan. 10, 2006[5]; Ex.

---

[3]In support of her claim of discrimination, Plaintiff makes
a number of allegations against Mr. Eichenwald.  Without being
able to identify a specific time period, Plaintiff avers that Mr.
Eichenwald made comments that Plaintiff's training and work ethic
were from a different era. Ex. 1, Woods Depo. 76:6 to 76:14.
Plaintiff, however, never asked Mr. Eichenwald what she meant by
the remark. Id. 77:2 to 77:4. Plaintiff concedes however that the
comment was made during those times she went to Mr. Eichenwald's
office to report on work activities, and Mr. Eichenwald expressed
the concern that Plaintiff checked in a lot. Id. 76:17 to 76:21.
Plaintiff also alleges that she was excluded from meetings. Id.
89:2 to 89:4.  However, Plaintiff does not recall any time when
she actually confronted Mr. Eichenwald about being excluded from
meetings.  Id. 90:20 to 90:23.  Plaintiff also took offense to an
e-mail that Mr. Eichenwald sent on May 6, 2003, the subject being
"Bring Out the Dead" with text stating "my branch collapses about
me - Tom, Dean and Brian are all out today." Ex. 15, E-Mail from
Carl Eichenwald, May 6, 2003.  Plaintiff does not recall speaking
with Mr. Eichenwald about the e-mail; nor does she recall the
primary issues Mr. Eichenwald was dealing with at the time.  Ex.
1, Woods Depo. 91:12 to 91:25; 92:4 to 92:9.  It was apparently
conveyed to Plaintiff that the e-mail was a joke, "like a Monty
Python or something."  Id. 93:2 to 93:4.

[4]The Flexiplace Program provides employees an opportunity to
work from home a certain number of days during a pay period.  Ex.
1, Woods Depo. 98:3 to 98:8.

[5]In his declaration, Mr. Eichenwald states that Plaintiff
submitted an application to participate in the Agency's

(continued...)

13, AFGE/EPA Flexiplace Application Form.    She avers that she asked Mr. Eichenwald, "through e-mail" on more than one occasion about the status of the application but received no response. Ex. 1, Woods Depo. 96:17 to 96:23.  Plaintiff does not recall, however, actually speaking to Mr. Eichenwald about the status of her application.[6]  Id. 97:7 to 97:10.

Mr. Eichenwald recalls that, at the time Plaintiff submitted her initial request, she identified Wednesday as the day she would like to work from home. Ex. 11, Eichenwald Decl. ¶ 20. Because the Branch already had a number of personnel working from home that day, Mr. Eichenwald was not comfortable authorizing Plaintiff to do so.  Id. ¶ 19.  Apparently, at some point after her initial submission, Plaintiff revised her Flexiplace request and asked to be allowed to work from home on Thursdays.  Id. Mr. Eichenwald states that he did not timely become aware of such change, and given the press of other business having significant programmatic implications, was tardy in addressing Plaintiff's Flexiplace application.  Id. ¶¶ 19-21.  Mr. Eichenwald did,

---

[5](...continued)
Flexiplace program in April 2003.  Ex. 11, Eichenwald Decl. ¶ 19. This is apparently a typo.  Regardless, there is no dispute that Plaintiff applied to participate in the program in or around April 2004.  Ex. 13, AFGE/EPA Flexiplace Application Form.

[6]On or around July 20, 2004, Plaintiff requested that her complaint be amended to include a retaliation claim based on denial of her request for flexiplace.  Ex. 14, Letter from Ronald B. Ballard to David H. Shapiro, July 29, 2004.

however, grant Plaintiff's request to participate in the Flexiplace program.  Ex. 1, Woods Depo. 97:25 to 97:26; Ex. 11, Eichenwald Decl. ¶ 20.  Notably, neither Plaintiff's salary nor her benefits were adversely impacted by the delay in the approval.  Ex. 1, Woods Decl. 98:11 to 99:17.

In the fall of 2005, Plaintiff started a detail in the Office of Pollution, Prevention and Toxics.  Ex. 1, Woods Depo. 99:18 to 99:24.  The detail was initially set for a 120 day period, but was extended such that the detail lasted over one year.  Id. 100:22 to 101:4.  According to Plaintiff, during the period of the detail, Mr. Eichenwald informed Mr. David Honeman, Plaintiff's supervisor during her detail, that Plaintiff had filed an EEO complaint.  Id.  101:10 to 101:14.  The conversation, however, had no impact on Plaintiff's detail being extended. Id. 101:15 to 101:19.  The detail ended in the latter part of 2006 at which time Plaintiff was permanently selected for a position in the new National Programs Chemical Division. Id. 102:1 to 102:4.

## II.   STANDARD OF REVIEW

### A.   Legal Standard for Summary Judgment

Summary judgment may be granted when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322

15

(1986); <u>Taylor v. Small</u>, 350 F.3d 1286, 1290 (D.C. Cir. 2003);

<u>Diamond v. Atwood</u>, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  A

genuine issue is one that could change the outcome of the

litigation.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc</u>, 477 U.S. 242,

243 (1986).  While all evidence and the inferences drawn

therefrom must be considered in the light most favorable to the

nonmoving party, <u>see</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

<u>Corp.</u>, 475 U.S. 574, 587 (1986), the nonmoving party - when faced

with a summary judgment motion - has the burden of establishing

more than the "mere existence of a scintilla of evidence"

demonstrating a genuine issue in dispute for purposes of

defeating the moving party's motion.  <u>See</u> <u>Lester v. Natsios</u>, 290

F.Supp.2d 11, 19-20 (D.D.C. 2003), <u>citing</u> <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. at 255.  "If the evidence is merely

colorable, or is not significantly probative, summary judgment

may be granted."  <u>Id.</u> at 249-250.  As the Supreme Court has

stated, "[o]ne of the principle purposes of the summary judgment

rule is to isolate and dispose of factually unsupported claims or

defenses."  <u>Celotex</u>, 477 U.S at 323-324.

**B.    Legal Standard for Discrimination Claims**

     **1.    Title VII**

The procedure for resolving a claim of discrimination such

as the instant one is well-established.  Under the scheme first

set forth in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792

(1973), the burdens of production first shift from employee to employer.  The plaintiff must first, by a preponderance of the evidence, establish a prima facie case of discrimination.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).  The Supreme Court has explained that the elements of a prima facie case of discrimination may differ from case to case.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 n.6 (1981).  The fundamental requirement, however, is that the prima facie case, without additional proof to the contrary, give rise to an inference that the defendant's conduct was discriminatory. See Simens v. Reno, 960 F.Supp 6, 8-9 (D.D.C. 1997).  As a general matter, therefore, to establish a prima facie case of discrimination based on national origin or sex under Title VII, a plaintiff must demonstrate by a preponderance of the evidence that (1) he is a member of a protected group, (2) an adverse employment action took place, and (3) the unfavorable action gives rise to an inference of discrimination.  Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002).

If the employee succeeds in establishing a prima facie case, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  See McDonnell Douglas, 411 U.S. at 802.  The burden on the employer is one of production, not persuasion - "it can involve no credibility

17

determination." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 144 (2000), <u>quoting</u>, Hicks, 509 U.S. at 509.

Once it is established that both parties have met their respective burdens of production (i.e., plaintiff by presenting a prima facie case and defendant by producing a non-discriminatory reason for its actions), the burden shifting scheme becomes irrelevant. <u>Hicks</u>, 509 U.S. at 510. Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice."[7] <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 101 (2003), <u>citing</u>, 42 U.S.C. § 2000e-2(m); <u>see also</u> <u>Teneyck v. Omni Shoreham Hotel</u>, 365 F.3d 1139, 1155 (D.C. Cir. 2004). The focus for summary judgment - or trial if summary judgment has not been sought or is denied - is whether discrimination can be inferred from "the combination of (1) the plaintiff's prima facie

---

[7]In <u>Fogg v. Gonzales</u>, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, <i>inter alia</i>, that the 1991 amendments to Title VII codified two alternative ways of establishing liability for intentional discrimination: (1) a single motive theory requiring that the plaintiff establish that discrimination was the "sole" or "but for" reason for the challenged employment action, brought under 42 U.S.C. § 2000e-2(a)(1); and (2) a "mixed-motive" theory requiring only that the plaintiff demonstrate that discrimination played a "motivating part" or was a "substantial factor" in the employment decision, brought under 42 U.S.C. § 2000e-2(m). <u>See also</u> <u>Porter v. Natsios</u>, 414 F.3d 13, 17-18 (D.C. Cir. 2005). Of course, if a plaintiff is unable to demonstrate that discrimination was <u>a</u> motivating factor for purposes of section 2000e-2(m), it seems obvious that the plaintiff will not be able to demonstrate that discrimination was <u>the</u> motivating factor under section 2000e-2(a)(1).

case; (2) any evidence the plaintiff presents to attack the
employer's proffered explanation for its actions; and (3) any
further evidence of discrimination that may be available to the
plaintiff (such as independent evidence of discriminatory
statements or attitudes on the part of the employer) or any
contrary evidence that may be available to the employer (such as
evidence of a strong track record in equal opportunity
employment)." Aka v. Washington Hosp. Center, 156 F.3d 1284,
1289 (D.C. Cir. 1998).   Although a plaintiff need not present
evidence in each of these categories to avoid summary judgment,
id., a plaintiff is obligated to present *substantial* and *credible*
evidence of discrimination in order to survive a motion for
summary judgment.  See Greene v. Dalton, 164 F.3d 671, 675 (D.C.
Cir. 1999) ("Accepting [some] conclusory allegations as true,
therefore, would defeat the central purpose of the summary
judgment device, which is to weed out those cases insufficiently
meritorious to warrant the expense of a jury trial."); Carpenter
v. Federal Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999)
(if plaintiff merely shows that the legitimate nondiscriminatory
reason offered by the employer is a pretext for a decision
intending to cover up an unsavory reason -- but one that is not
illegal under the antidiscrimination law,  the plaintiff is not
entitled to try issues of fact, and summary judgment for the
employer is appropriate.); Hastie v. Henderson, 121 F.Supp.2d,
72, 77 (D.D.C. 2000) aff'd, No. 00-5423, 2001 WL 793715 (D.C.
Cir. 2001)("To defeat a motion for summary judgment, a plaintiff

cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'"); Woodruff v. DiMario, 164 F.Supp. 2d 1, 5 (D.D.C. 2001).[8]

Importantly, although "intermediate evidentiary burdens shift back and forth under [the framework established in McDonnell-Douglas Corp., cited supra], '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves, 530 U.S. at 143 (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. at  253.)

    2.  **ADEA Claims**

Age discrimination claims are resolved under the burden-shifting standard set forth in McDonnell-Douglas Corp. v. Green, cited supra.  See Teneyck, 365 F.3d at 1155.  To make out a prima facie case of discrimination under the ADEA, a plaintiff must show that she:  (1) belongs to the statutorily-protected age group (over 40), (2) was qualified for the position, (3) suffered an adverse action, and (4) was disadvantaged in favor of a younger person.  Teneyck, 365 F.3d at 1155; May v. Shuttle, Inc.,

_____

[8]Additionally, there will be "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  Weigert v. Georgetown University, 120 F.Supp.2d 1, 22 (D.D.C. 2000), quoting, Reeves v. Sanderson Plumbing Co., 530 U.S. 133 (2000).

129 F.3d 165, 172 (D.C. Cir. 1997), cert. denied, 524 U.S. 927 (1998); Forman v. Small, 271 F.3d 285, 292 (D.C. Cir. 2001).  The "younger person" referred to in the fourth requirement must be a person "considerably" younger than the plaintiff.  See Crockett v. Richardson, 127 F.Supp. 2d 40, 46 (D.D.C. 2001); see also Beeck v. Federal Express Corp., 81 F. Supp.2d 48, 53 (D.D.C. 2001) ("To raise an inference of discrimination by showing that a younger person was favored, a plaintiff must point to a worker with a 'significant' or 'substantial' difference in age") (citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996)).

## III. ARGUMENT

### A.   Plaintiff's Claim of Discrimination Lacks Merit.

#### 1.   Defendant Had Legitimate Business Reasons for Its Promotion Determinations.

The decisions to promote Messrs. Dyer and Ellis arose from a collaborative process in which TPED's senior management determined which of the Division's eligible non-attorney GS-13s were most worthy of promotion.  Ex. 6, Pontius Sworn Statement, at 2.  One of the key considerations was a candidate's capacity to work independently.  Ex. 11, Eichenwald Sworn Statement, at 2. Mr. Eichenwald concluded that Mr. Dyer worked significantly more independently than Plaintiff, her longer seniority

notwithstanding.[9] Id. at 4.  Mr. Eichenwald stressed that Mr. Dyer managed his program with "extraordinarily little oversight."  Id. at 5.  Mr. Eichenwald also noted that Mr. Dyer effectively represented the Division both within and outside the EPA.  Id. Ms. Pontius also emphasized Mr. Dyer's initiative including dealing with the challenges of taking over one of the Division's biggest cases.  Ex. 6, Pontius Sworn Statement, at 4. Similarly, Mr. Ellis, in Ms. Pontius' assessment, demonstrated initiative and was considered one of the most productive employees in terms of cases.  Id. at 3-4.

While the managers all agreed that Plaintiff performed successfully at the GS-13 level, they were also unanimous in their assessment that she was not performing at the GS-14 level, taking responsibility in the way a GS-14 should.  Ex. 4, Eichenwald Sworn Statement, at 4; Ex. 6, Pontius Sworn Statement, at 4; Ex. 7, Smith Sworn Statement, at 3.   Plaintiff, by her own admission, noted that Mr. Eichenwald expressed concern about her continuous need to "check in."  Ex. 1, Woods Depo. 76:5 to 76:21. Unsurprisingly, a manager can reasonably infer from such a practice a lesser degree of independence, as Mr. Eichenwald did.

---

[9]Notably, Plaintiff does not hold the opinion that Mr. Dyer was undeserving of the promotion.  Ex. 1, Woods Depo. 88:14 to 88:19.

It is certainly management's prerogative to regard the ability to work independently as a critical consideration for a higher grade position.

Thus, Plaintiff's allegation that the selection determination here was based on an unlawful animus is untenable. There were multiple managers involved in the promotion determination, and none expressed the opinion that Plaintiff was better qualified for the promotion than Dyer and Ellis. Furthermore, any suggestion that Plaintiff's non-selection was related to her age and sex is belied by the immediately prior TPED non-attorney promotion process. In that process, also spearheaded by Ms. Pontius and Messrs. Eichenwald and Stubbs, TPED management chose Yvette Hellyer, a white female over forty-years old, instead of either Mr. Ellis or Mr. Dyer, both of whom were younger than Ms. Hellyer, and eligible for a promotion. Ex. 16, Pontius Depo.

### 2.    Plaintiff's Claim of Discrimination is Not Supported by Credible Evidence.

"[M]ere allegations, conclusory statements, . . .assertions of belief rather than fact, and such. . .cannot serve to raise a genuine dispute on a question of material fact," and thus, cannot defeat a summary judgment motion. Friedel v. City of Madison, 832 F.2d 965, 972 (7th Cir. 1987); accord Carney v. American Univ., 960 F.Supp. 436, 439 (D.D.C.1997) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir.1987)), aff'd in

23

part, rev'd in part, 151 F.3d 1090 (D.C.Cir.1998)("[N]either the nonmovant's conjecture and surmise nor mere 'conclusory allegations of discrimination, without more' are sufficient to defeat a motion for summary judgment.").

Here, Plaintiff's grievances about Mr. Eichenwald's purported conduct are insufficiently probative to undermine summary judgment being granted in Defendant's favor. As indicated above, Plaintiff complains about Mr. Eichenwald making a comment that Plaintiff's training and work ethic were from a different era. However, Plaintiff concedes that the comment was made during those times she went to Mr. Eichenwald's office to report on work activities, and Mr. Eichenwald expressed the concern that Plaintiff checked in too much. Ex. 1, Woods Depo. 76:17 to 76:21. The remark at best evidences a concern regarding an employee who needs too much guidance or reassurance. Regardless, given that Plaintiff never asked Mr. Eichenwald what he meant by the remark, id. at 90:20 to 90:23, her opinion that it in some way evidences discriminatory animus is too speculative for purposes of maintaining a discrimination claim. See Campbell-El v. District of Columbia, 874 F.Supp. 403, 407 (D.D.C. 1994)("Beliefs are not fact", and a plaintiff, to defeat a defendant's motion for summary judgment, must assert facts.); Carney v. American Univ., 960 F.Supp. 436, 439 (D.D.C.1997) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th

24

Cir.1987)), aff'd in part, rev'd in part, 151 F.3d 1090
(D.C.Cir.1998)("[N]either the nonmovant's conjecture and surmise
nor mere 'conclusory allegations of discrimination, without more'
are sufficient to defeat a motion for summary judgment.").

Plaintiff also took offense to an e-mail that Mr. Eichenwald
sent on May 6, 2003, the subject being "Bring Out the Dead" with
text stating "my branch collapses about me - Tom, Dean and Brian
are all out today." Ex. 15, E-Mail from Carl Eichenwald, May 6,
2003. Again, Plaintiff cannot recall speaking with Mr.
Eichenwald about the e-mail; nor does she recall the primary
issues Mr. Eichenwald was dealing with at the time. Ex. 1, Woods
Depo. 91:12 to 91:25; 92:4 to 92:9. It was apparently conveyed
to Plaintiff that the e-mail was a joke. Id. 93:2 to 93:4.

Plaintiff also alleges that she was excluded from meetings.
Id. 89:2 to 89:4. However, as appears to be a pattern,
Plaintiff does not recall any time when she actually confronted
Mr. Eichenwald about being excluded from meetings. Id. 90:20 to
90:23.

The purported actions of Mr. Eichenwald as cited by
Plaintiff are just too attenuated, too conclusory and too far
removed from the consensus promotion determination at issue to
have any probative value. Fletcher v. Atex, Inc., 68 F.3d 1451,
1456 (2nd Cir. 1995)("[A] party may not 'rely on mere speculation
or conjecture as to the true nature of the facts to overcome a

motion for summary judgment.")(citation omitted).  For this reason, summary judgment should be granted in Defendant's favor.

### B.    Plaintiff Was Not Subjected to Retaliation

Title VII provides, in pertinent part, that it is unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  A prima facie case alleging retaliation or reprisal under Title VII is established when the plaintiff demonstrates that (1) she engaged in protected behavior; (2) she was subject to an adverse action by her employer; and (3) there is a causal link between the adverse action and the protected activity.  Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985).  If plaintiff is able to establish a prima facie case of retaliation, the analysis then follows as that for a discrimination claim, i.e., plaintiff has the burden of proving that defendant's actions were not taken for the reasons offered, but instead, for a retaliatory purpose.  See, e.g., Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 844-845 (D.C. Cir. 2001).

As indicated above, to make a prima facie case of discrimination or retaliation under Title VII, a plaintiff is

26

required to demonstrate, among other matters, that an adverse action took place. <u>Patterson v. Johnson</u>, --- F.3d ----, 2007 WL 3145350 (D.C. Cir. Oct. 30, 2007), citing, <u>Brown v. Brody</u>, 199 F.3d 446, 452-455 (D.C. Cir. 1999)("Liability for discrimination under Title VII requires an adverse employment action. . .); <u>Douglas v. Pierce</u>, 707 F. Supp. 567 (D.D.C. 1988), <u>aff'd</u>, 906 F.2d 783 (1990); <u>Mitchell v. Baldrige</u>, 759 F.2d 80, 84 (D.C. Cir. 1985).  The D.C. Circuit affirmed in <u>Brown v. Brody</u> that a "common element for discrimination and retaliation claims against federal employers, and private employers, is . . . some form of legally cognizable adverse action by the employer."  199 F.3d at 453.

Further, the D.C. Circuit in <u>Brown</u> affirmed that, to state a discrimination or retaliation claim under Title VII, a plaintiff must demonstrate that he or she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."  <u>Brown</u>, 199 F.3d at 457.

Indeed, the courts have firmly resisted intervening in grievances that would result in "judicial micromanagement of business practices" and are at most based on mediate employment decisions to which an employee disagrees.  See <u>Russell v. Principi</u>, 257 F.3d 815, 818 (D.C. Cir. 2001), <u>quoting</u> <u>Smart v.</u>

27

Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996) and Mungin v.
Katten, Muchin & Zavis, 116 F.3d 1549, 1556 (D.C. Cir. 1997); see
also Brodetski v. Duffey, 141 F. Supp. 2d 35, 44 (D.D.C. 2001)
(citations omitted) ("courts cannnot be wheeled into action for
every workplace slight, even one that was possibly based on
protected conduct").  In Burlington Northern v. White, 126 S.Ct.
2405 (2006), the Supreme Court stated, in pertinent part, that
the "[t]he anti-retaliation provision [of Title VII] protects an
individual not from all retaliation, but from retaliation that
produces an injury or harm. . .[thus,] a plaintiff must show that
a reasonable employee would have found the challenged action
materially adverse, 'which. . .means it well might have dissuaded
a reasonable worker from making or supporting a charge of
discrimination.'" Id. at 2414-15, citing Rochon v. Gonzales, 438
F.3d 1211, 1219 (D.C. Cir. 2006)(quoting Washington v. Illinois
Dept. of Revenue, 420 F.3d 458, 662 (7th Cir. 2005)(emphasis
added).  "An employee's decision to report discriminatory
behavior cannot immunize that employee from those petty slights
or minor annoyances that often take place at work and that all
employees experience." Burlington Northern, 126 S.Ct. at 2415.

     Based on these standards, Plaintiff's retaliation claims
must be dismissed.  As an initial matter, the delay in processing
Plaintiff's application to participate in the flexiplace program
is just the type of mediate action which does not serve as a

basis for a viable retaliation Title VII claim.  See, e.g.
Caldwell v. Leavitt, 378 F.Supp.2d 639, 667 (M.D.N.C. 2005)(delay
in receiving approval of flexiplace request does not constitute
an adverse employment action.).  Besides, Plaintiff readily
concdes that neither her salary nor her benefits were adversely
impacted by the delay in the approval.  Ex. 1, Woods Decl. 98:11
to 99:17. Accordingly, Plaintiff's retaliation claim based on the
delay in approval of her flexiplace request should be dismissed,
or summary judgment granted in Defendant's favor.[10]

    Plaintiff's claim related to Mr. Eichenwald's disclosure to
Plaintiff's detail supervisor that Plaintiff had filed suit must
be dismissed for the same reason, specifically, failure to allege
an adverse action.  Plaintiff readily admits that the detail was
initially set for a 120 day period, but was extended such that
the detail lasted over one year. Ex. 1, Woods Depo. 100:22 to
101:4. Accordingly, Mr. Eichenwald's purported disclosure had no
impact on the ultimate decision to extend the detail, and indeed,
during the latter part of the detail in 2006, Plaintiff was
permanently selected for a position in the new National Programs
Chemical Division. Id. 102:1 to 102:4.  Accordingly, given that
Plaintiff suffered no tangible, adverse action resulting from the

_____

    [10]Alternatively, as explained supra, Defendant provided
legitimate reasons for the delay, specifically, the press of
other business having significant programmatic implications.  Ex.
11, Eichenwald Decl. ¶ 20.

disclosure, Plaintiff's retaliation claim based on such must be dismissed.

**IV.  CONCLUSION**

Based on the discussion above, Defendant respectfully requests that the Court grant Defendant's motion for summary judgment and dismiss Plaintiff's complaint with prejudice.

Date: December 7, 2007

Respectfully Submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney



/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney



/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the
  District of Columbia, Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-Mail: beverly.russell@usdoj.gov

31

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on <u>Friday, December 7, 2007</u>, service

of ***Defendant's Motion for Summary Judgement*** was made by the

Court's Electronic Case Filing System to:

David H. Shapiro
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W., Suite 1090
Washington, D.C.  20005
dhshapiro@swickandshapiro.com


                        /s/ Beverly M. Russell
                        _____
                        Beverly M. Russell
                        Assistant U.S. Attorney