Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 4

**Rebecca Woods**

v.                                                                Agency Case No. 2004-0042-HQ

**United States Environmental Protection Agency**

I, Carl John Eichenwald, Supervisory Attorney known as Branch Chief for organizational issues, GS-15 Step 4, of the Toxics and Pesticides Enforcement Division (TPED) of the Office of Regulatory Enforcement (ORE) in the Office of Enforcement and Compliance Assurance (OECA) of the Environmental Protection Agency (EPA), pursuant to 28 U.S.C.1746, do hereby participate in this interview with the Investigator, Karen Desko, to pursue the complaint of discrimination of Rebecca Woods.

1. Please state your age and sex.

I am male and I am 44 years old.

2. What is your current position and how long have you held this position?

I am the Branch Chief/Supervisory Attorney of the TPED and have been for approximately 4.5 years and with the EPA for just short of twelve years.

3. Who are your first and second line supervisors?

My first in Ann Pontius and my second is Walker Smith.

4. What is your organizational relationship to Ms. Rebecca Woods, hereafter referred to as the Complainant?

I am her first line supervisor.

5. Do you know the Complainant's age, and sex? If yes, how do you know each one?

Tab F-2 p. 1-9

By observation, I perceive her gender as female, I do not know her age specifically.

**6. What was the hiring process for the GS-14 non-competitive, non-attorney positions for which Mr. Brian Dyer and Mr. Tony Ellis were hired?**

The term Accretion Promotion better applies. Each office within OECA has an allocation of a certain number of non-attorney position slots above Grade 13. I don't recall exactly what the number is for ORE. It is somewhere, give or take, 30. In the end of calendar 2003, EPA offered a buyout to employees of certain classifications and grades, as a result of that buyout, four GS-14 non-attorney positions came available. In other words, four people in that group had retired. In late December of 2003, I was the Acting Division Director while Ms. Pontius was on leave and I was asked in that capacity who among our pool of GS-13 non-attorneys would we want to promote to a 14 to fill these open slots. I identified two individuals, Tony Ellis and Brian Dyer, based on earlier discussions with my divisions management team, Mr. Stubbs, Ms. Brown, Ms. Pontius and myself,. In those internal discussions, we considered, as we do on a regular and continuing basis, the performance of our staff as to how we would queue up our employees for the promotions. We looked at a number of different factors in our discussion. We looked at the level of independence under which they operated, which is very important, the quality of their product, their ability to interact with all levels in the agency, their ability to represent us to outside constituencies. We perceive the promotion to a GS-14 as an extraordinary event that happens very infrequently. This is the first one I have done in my four years. Approximately four years ago, we had promoted a woman in Mr. Stubbs branch to a

Tab _____ p. ___

GS-14, prior to that, we had promoted two other women to a GS-14, my guess is 1995 and those were the entire set of promotions by the division since 1994, so it is an extraordinary event. With the coming buyouts, we knew it was an event we needed to be prepared for. I had anticipated that by putting forward two names, it would work out well to get one and I would be content with that and I knew Ms. Pontius was going to have a very difficult decision to make as to whether or not Mr. Ellis or Mr. Dyer would be at the head of the list. We knew by how we graded out, which is informal due to the EPA's performance process which allows no numeric ranking, we knew the two of them had advanced ahead of the rest of the pack. I put those names forward. It is my understanding based on conversations with Ms. Pontius that the senior management group of ORE, that being the Office Director and Division Directors, discussed the issue, looked at the allocation of the GS-14 slots among the different divisions and ultimately determined that TPED would receive two of the four slots because our number of GS-14s was not proportional to the size of our staff compared with the other divisions. I believe, but I am not certain that Water Enforcement Division (WED) got the other two. So, we received two of the positions and thus we were able to promote the two employees through Accretion of Duties. Accretion of Duties is a concept and a policy by which if an employee is now performing at the level higher than the one they are in, they can be promoted to that particular next grade non-competitively.

7. **Who played a role in the hiring process and what were their roles?**

I made recommendations to the Resource Management Staff Director, both in my

Tab ____ p. ____

capacity and in Ms. Pontius' capacity in my Acting role. They were later ratified by her when she returned from leave. It is my understanding that Ms. Smith approved the choices.

**8. Why were these hirings done as non-competitive instead of competitive through an open posting of a Vacancy Announcement?**

The promotions were done consistently with the agency's Accretion Promotion policies.

**9. Did the Hiring Officials know the Complainant's age and sex? If yes, how do they know each one?**

By observation, we knew her gender, and I think we had a general understanding of her age.

**10. Please describe why the two individuals selected were chosen over the Complainant?**

I have a limited amount of information for Mr. Ellis because he works for Mr. Stubbs. For Mr. Dyer, he operates very well independently which is a very important characteristic for me. I like to set objectives for staff without particular direction because it is my expectation that very senior staff should be able to map out their own plans and manage their own projects without direction from me. And Mr. Dyer does this very, very effectively. He has what I consider to be an entrepreneurial approach to his work that I do not have to go out and assign things to him. When things come him

Tab __F-2__ p. __4__

that are within his purview, I give them to him, but he is out there managing his own program with extraordinarily little oversight from me. I check in from time to time so I can have an overall view of what he and everyone else is doing. He effectively represents us outside of the division both within and outside of EPA. He is an accomplished presenter and I sent him last year to a bilateral conference in EL Paso, Texas with the US and Mexico and it was the USMPIE, and he did outstanding work there. I was later down in Texas at a different meeting and was approached by a representative from the state of Texas who went out of his way to applaud Brian's work, his ability to explain complicated issue well and respectfully.

**11. Was the Complainant qualified and considered for the positions? If not, why not and was the Complainant told this?**

She had completed a year in grade and was therefore eligible. We considered all of our staff that was eligible, at that time we had six people in the division who were non-attorney GS-13s that were eligible in having completed one year of service at that grade and she was one of them.

**12. Did the Complainant meet the job requirements for the position? If not, why not?**

She was functioning well and was successful at a GS-13 level, and I did not see her work rising to a GS-14 level. It did not have the independence or representational aspects that are called for at the 14 level. I informed Ms. Woods that we were promoting staff and she was not going to be promoted at her end of year evaluation at the end of February 2004. I attempted to go into detail, she appeared to me to be angry

Tab ___F-2___ p. __5__

and agitated and upset all of which I respect and empathize with. She stated this was 'bullshit', refused to sign the end of year performance evaluation and left my office, so I did not get to conclude my discussion with her at that time. I decided at that point that it was appropriate to give her a little bit of space and distance and allow her to regain her composure. Sometime after that, I was visited by an EEO Counselor, to discuss it. I had one meeting with the Counselor, we discussed many of the issues and at that meeting, the Counselor inquired as to whether or not I would agree to engage in a facilitated meeting with Ms. Woods to talk about these issues. I said that I would and did not hear back from the Counselor. I then called the Counselor a number of times and left messages and finally reached them and was informed that Ms. Woods had terminated the informal counseling process. After that, I did a mid-year evaluation of Rebecca's work in July of this year and attempted to bring some of these subjects up and found her to be uncommunicative and unwilling to engage in a meaningful dialogue. Accordingly, her evaluation was very brief.

**13. Were you aware that the Complainant was interested in being promoted to a GS-14 and had asked to be informed of the next opening for a GS-14?**

Yes. There are a couple of factors. I have seen different offices do promotions like this in different ways. I have a friend who works at Interior and when they have a position open up, they advertise it and have their employees go through a beauty pageant and he informed me that he thought that was a divisive process. That you had employees competing against each other for a scarce and valuable resource. Irrespective of the overall offices' decision on how to handle it, it would be my

Tab F-2 p. 6

preference to do it through Accretion, the way we did it. The most important reason is that I as the manager am responsible for supervising my staff, for rating their performance, and I consider this a continuing duty, not something I do twice a year. I try to pay attention to performance and accordingly, I think that going through a Vacancy announcement process would not add value to what I had. I did not have a separate, open slot and could therefore not do a Vacancy Announcement. I had a promotion and with not having a slot, I could not advertise it, the only way to do it was through Accretion. This was the only vehicle available to get any of my staff from a 13 to a 14. Another factor I thought of after reading your questions is that the smallest we can limit a Vacancy Announcement is OECA wide, so if we had done that it would have actually hurt the Complainant's chances because it would have been a much larger applicant pool.

**14. Was the act of not promoting the Complainant an act of discrimination? If no, what was it?**

It was not an act of discrimination; it was based upon a review of the abilities, skills and merits of all the eligible staff within the work unit.

**15. Are there any similarly situated employees (age, sex, GS-13 ) to the Complainant, and were they treated differently than her or the same in these regards?**

All staff were treated the same. There were no females over 40 in the eligible pool of employees, we had already promoted all of the females over 40 other than she.

**16. Are you aware of anyone involved in the hiring process or anyone else**

Tab F-2 p. 7

making any specific remarks to or about the Complainant based on the two bases of this complaint (age and sex)? If yes, who said what and when?

I have no knowledge of any such remarks.

**17. Are you aware of any other indicators that would show that the Complainant was discriminated against due to her age and sex?**

No.

**18. Do you have any additional documentation, evidence, or witnesses which support your contentions in this matter?**

I will submit the documents that you have requested.

**19. Is there anything else you want me to know about this case?**

This has been a tremendous disappointment to me. I work very hard to treat my staff fairly, to treat them with professional respect, to get them the things I perceive them to be entitled to. The federal government is not particularly able to reward their employees for their good work and so this matter is a big disappointment to me. I respect Rebecca's frustration, I have known about her interest in promotion since I took the job, I have known about it since before I came and she was transferred. This whole matter has soured our relationship which is very disappointing. I perceive that she goes out of her way to avoid speaking to me which is frustrating and professionally difficult. I would like closure and be able to move on.

Tab F-2 p. 8

Tab _____ p. _____

I have read the above statement, consisting of 9 pages. I declare under the penalties of perjury that my statement is true, correct, and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

Executed on: 12/3/04 .

Witness Signature _____

Investigator Signature _____