Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 6

**Rebecca Woods**

v.                                     Agency Case No. 2004-0042-HQ

**United States Environmental Protection Agency**

I, Ann Pontius, Director of the Toxics and Pesticides Enforcement Division, GS-15, of the Office of Regulatory Enforcement (ORE) in the Office of Enforcement and Compliance Assurance (OECA) of the Environmental Protection Agency (EPA), pursuant to 28 U.S.C.1746, do hereby participate in this interview with the Investigator, Karen Desko, to pursue the complaint of discrimination of Rebecca Woods.

1. **Please state your age and sex.**

I am female and I am 49.

2. **What is your current position and how long have you held this position?**

I am the Director and I have held the position since April of 2002 and I was acting Director for a year previous to that. I have been with the agency since 1984.

3. **Who are your first and second line supervisors?**

My first is Walker Smith and my second is Thomas Skinner.

4. **What is your organizational relationship to Ms. Rebecca Woods, hereafter referred to as the Complainant?**

I am her second line supervisor, Carl Eichenwald reports to me and this was true at the time of the complaint.

5. **Do you know the Complainant's age, and sex? If yes, how do you know each one?**

Tab F-3  p. 1-6  [handwritten initials]

I do not know her age, I know that she is a female by observing her.

**6. What was the hiring process for the GS-14 non-competitive, non-attorney positions for which Mr. Brian Dyer and Mr. Tony Ellis were hired?**

The EPA is in a situation where they have too many employees in the higher grades. So each office is given a ceiling on the number of higher levels they can have in each office. Each office is asked to manage within that ceiling, so they try and stay at or below the ceilings for GS 14s to help manage the overall budget. In January, there were three GS-14 positions given to the ORE, and there had been other GS-14s made available at other times, I was given two of the three positions that were given to our office and at that point I was asked to make recommendations based on all of my employees at the 13 level. It is called an 'accretion of duties' promotion, it is definitely based on merit, based on employee's taking on additional responsibilities at the GS-14 level and doing well. So, in January I had two openings and I had five people eligible. Previous to this, I had one opening and six people available and selected a female, Yvette Hellyer who I know is over 40. For this one, I sat down with the management team, Carl Eichenwald and Gerry Stubbs and my Associate Director, Stephanie Brown. The four of us had a discussion and I relied primarily on each Branch Chief telling me which of their employees were already working at the 14 level and doing well at the 14 level. My Branch Chief, Mr. Eichenwald, told me that in his branch, he believed Brian Dyer had taken on additional responsibilities and was doing well and he recommended Brian Dyer. And my other Branch Chief, Mr. Jerry Stubbs, he recommended Tony Ellis because Tony had taken on additional duties and

was doing very well. We discussed every employee at the GS-13 level and had an informal ranking and Brian and Tony were tied for being ranked first and Rebecca was fourth. So, based on the management team's recommendation, I made a recommendation to Ms. Walker Smith and she made the decision and signed the memos to her boss who at the time was J.P. Suarez.

**7. Who played a role in the hiring process and what were their roles?**

Me, Mr. Eichenwald, Mr. Stubbs, Ms. Brown and Ms. Smith. The three managers made recommendations to me and I made a recommendation to Ms. Walker who made the decision. Basically, it is me who makes the decision, but Ms. Smith signs off on it due to our system of approval.

**8. Why were these hirings done as non-competitive instead of competitive through an open posting of a Vacancy Announcement?**

I did consider everybody that was at the GS-13 level, so they really weren't non-competitive, they just weren't announced through a Vacancy Announcement.

**9. Did the Hiring Officials know the Complainant's age and sex? If yes, how do they know each one?**

I don't know if Walker would know her age, she would know that she is female from seeing her.

**10. Please describe why the two individuals selected were chosen over the Complainant?**

Because they had already demonstrated an ability to work at a GS-14 level. Tony had

Tab __F-3__ p. __3__

developed some enforcement initiatives, he is one of our most productive employees in terms of cases, he helped set up a new center in Denver and all the operating procedures there and is involved in one of our biggest cases we're doing now. He shows a lot of initiative and does really good work. Brian Dyer also shows a great deal of initiative, he works mostly in our Pesticide program, he has developed an initiative to help better protect our borders from chemical, has developed good relationships and training with Border Patrol so we know what is coming in to the country, he has stepped in to take over the technical portion of one of our biggest lead cases when he didn't have expertise in that area and had to learn it, and he took over the position of web master. So, he also brings a lot to the table and this is all detailed in the Justification Memos I am giving you today.

**11. Was the Complainant qualified and considered for the positions? If not, why not and was the Complainant told this?**

Rebecca is capable of doing GS-14 work, but right now she is doing solid GS-13 work and occasionally I don't know if she is consistently operating at her current grade level. I don't know if anyone has told her that to get an Accretion promotion, you need to be working at a 14 level and she simply isn't doing that right now. Her first line supervisor can tell you that.

**12. Did the Complainant meet the job requirements for the position? If not, why not?**

No, because she wasn't working at a GS-14 level which is the requirement for the Accretion Promotion.

**13. Were you aware that the Complainant was interested in being promoted to a GS- 14 and had asked to be informed of the next opening for a GS-14?**

Yes, I was. We don't inform staff of Accretion Promotions, we do the selection as our jobs as managers, based on merit to select the most qualified. So, it would not have been appropriate to inform her of the opening.

**14. Was the act of not promoting the Complainant an act of discrimination? If no, what was it?**

No, it was a management hiring decision based on merit.

**15. Are there any similarly situated employees (age, sex, GS-13 ) to the Complainant, and were they treated differently than her or the same in these regards?**

At the time, no there were no other females over 40. For the previous promotion, there was and I selected a female over 40. The Complainant was absolutely treated the same as everyone else in this process.

**16. Are you aware of anyone involved in the hiring process or anyone else making any specific remarks to or about the Complainant based on the two bases of this complaint (age and sex)? If yes, who said what and when?**

No.

**17. Are you aware of any other indicators that would show that the Complainant**

Tab __F-3__ p. __5__

was discriminated against due to her age and sex?

No.

**18. Do you have any additional documentation, evidence, or witnesses which support your contentions in this matter?**

The Human Resources Bulletin on Accretion Promotions and the two Justification Memos which I have given to you today. And, if it would be helpful, David Swack, the Senior Budget Officer for OECA should be able to explain the ceiling on GS-14s much better than I can.

**19. Is there anything else you want me to know about this case?**

I think I covered it, the main thing I wanted you to understand was the ceiling issue. There are a limited number of 14s and we make these decisions based on merit. We look at every GS 13 who is eligible when we get these openings. There was no discrimination in this hiring process.

I have read the above statement, consisting of 6 pages. I declare under the penalties of perjury that my statement is true, correct, and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

Executed on: 12/2/04

Witness Signature _____

Tab __F3__ p. __

Investigator Signature _/s/ Karen Suter_