Woods v. Johnson,
Civil Action No. 04-1460(HHK)
Ex. 7

Rebecca Woods

v.   Agency Case No. 2004-0042-HQ

United States Environmental Protection Agency

I, Walker Smith, Office Director of the Office of Regulatory Enforcement (ORE), SES, in the Office of Enforcement and Compliance Assurance (OECA) of the Environmental Protection Agency (EPA), pursuant to 28 U.S.C.1746, do hereby participate in this interview with the Investigator, Karen Desko, to pursue the complaint of discrimination of Rebecca Woods.

**Please state your age and sex.**

I am 56 years old and I am female.

**What is your current position and how long have you held this position?**

I am the Office Director of the ORE and have been for two and a half years.

Previous to that I was Principal Deputy Chief of the Environmental Enforcement

Section of the Department of Justice.

**Who are your first and second line supervisors?**

My first line supervisor is Phyllis Harris, Principal Deputy Assistant Administrator;

my second line supervisor is Thomas Skinner, Acting Assistant Administrator.

**What is your organizational relationship to Ms. Rebecca Woods, hereafter referred to as the Complainant?**

I think technically I am her fourth line supervisor. She reports to the

Branch Chief, who reports to Ann Pontius, who reports to Randy Hill and me.

Tab F-4 p. 1-7   Witness' Initials WS   Page 1 of 7

**Do you know the Complainant's age, and sex? If yes, how do you know each one?**

I know her sex from seeing her, and I know her age from you telling me this morning.

**What was the hiring process for the GS-14 non-competitive, non-attorney positions for which Mr. Brian Dyer and Mr. Tony Ellis were hired?**

I would not describe it as a hiring process; this was a promotion, a process very different from hiring. We have a GS 14, 15 ceiling in the agency for non-lawyers, EPSs, Environmental Protection Specialists. One of the issues for EPSs is that there is a limit on the number that can go from 13 to 14. The agency has limits which are then transferred to the Assistant Administratorships. These limits are quite controversial. I am not sure of the origin of them. I don't know if they are in a written policy. I am not sure if this is an OPM or an EPA policy. I can tell you that it is quite controversial, and that as the staff gets more senior it becomes a larger issue with the graying of the agency. There is a feeling that it is unfair because there are different standards for attorneys and EPSs. And it can have unintended consequences; if there is a GS 14 in another AAship that wants to transfer and the other AAship is at its limit, they cannot get the job as a GS14. The issue of the limits is out of my hands. ORE has a limit, and when I came here in 2002, we were at out limit, and it was one of the first things I heard about. I have five divisions in ORE and my limit applies to all five divisions. When I came here, I had informal discussions with all of my Division Directors and they all had people they wanted to move into GS-14s; they had people who they thought were the most disadvantaged by this

policy. We got the ability to promote one person shortly after I got here. These opportunities come very sporadically. We promoted someone in the Water Division who was a white male. We promoted a white female shortly after that. At some point we got four of them, and my process for deciding who is the most deserving is that I talk to each Division Director. And, in terms of me getting to know the staff, I have weekly meetings with each Division and encourage them to bring staff to address issues directly, so I get to know them and see them in action. Ann Pontius had been talking with me about Brian and Tony and I thought they were both good. Other Division Directors talked to me about others who they thought should go to a 14. When we had four openings, I told Ann that she could have two of them, because they hadn't gotten any. I try not to do it by division, but when I looked at the next tier, nobody jumped out from any one division. I gave Ann two, and some other divisions gave me some names, too. I and my then Deputy, David Nielson looked at the names of the people submitted. One of the qualifications is who are the most qualified among those who are eligible. It is supposed to be people who are not merely qualified to do their jobs, but step into bigger areas of responsibility and take the lead on cases or projects. It was Ann's view that Brian and Tony had met those qualifications. While there is nothing wrong with Rebecca's performance, she did good work, but it didn't rise to the level of taking responsibility in the way a GS-14 should. My practice is that I rely on my Division Directors, and use my own judgment from staff presentations in weekly meetings. I did not disagree with Ann's assessment. The people chosen had taken bigger responsibility than Rebecca.

**Who played a role in the hiring process and what were their roles?**

Ann made the recommendation and I made the decision along with David Nielson, then Deputy Director. He has since resigned from the Agency. He was in agreement with the decision. Then, we made our recommendation to Phyllis Harris. Carl Eichenwald didn't play a role that I am aware of, which doesn't mean he didn't. I am sure Ann confers with her Branch Chiefs, but in this specific matter, I do not know. The recommendation that goes to Phyllis just recommends people, it does not compare them with specific other employees.

**Why were these hirings done as non-competitive instead of competitive through an open posting of a Vacancy Announcement?**

We don't view them as hirings, we view them as promotions. People are promoted from one grade level to the next all the time. They are promotions, not hirings, and so there would never be a Vacancy Announcement because in fact there was no vacancy.

**Did the Hiring Officials know the Complainant's age and sex? If yes, how do they know each one?**

They would know she is female from seeing her, but not her age.

**Please describe why the two individuals selected were chosen over the Complainant?**

They had demonstrated their ability to perform at the higher level. Ann was choosing among the people in TPED, but ultimately the decision was made from all of ORE.

Those we had selected we felt had taken on larger areas of responsibility, and this included Brian and Tony.

**Was the Complainant qualified and considered for the positions? If not, why not and was the Complainant told this?**

She was eligible because she is a 13 and an Environmental Protection Specialist. She was considered, but found not qualified. Ann advised me that she told Rebecca.

**Did the Complainant meet the job requirements for the position? If not, why not?**

The position doesn't change; it was a promotion. The questions is, "Has she demonstrated a level of work such that she deserves a higher grade?" and the answer was "No".

**Were you aware that the Complainant was interested in being promoted to a GS-14 and had asked to be informed of the next opening for a GS-14?**

Yes, I was aware she was interested in being promoted, but we wouldn't inform people of this promotion because it wasn't a vacancy. I was aware that she and Ann had had a number of conversations about her desire to be a GS 14.

**Was the act of not promoting the Complainant an act of discrimination? If no, what was it?**

It was not an act of discrimination, it was a decision about which employees at the GS-13 level who were EPSs had demonstrated the qualifications to become a GS-14.

Within that, it is possible at any time, and most often is, that more employees demonstrate the capacity than we can promote, but that wasn't the case with Rebecca. The decision was made based on her qualification.

**Are there any similarly situated employees (age, sex, GS-13) to the Complainant, and were they treated differently than her or the same in these regards?**

A year and a half or so ago, a female over 40 was promoted, but there weren't others in the same demographic at this time, I don't believe. She was treated the same as others in the process.

**Are you aware of anyone involved in the hiring process or anyone else making any specific remarks to or about the Complainant based on the two bases of this complaint (age and sex)? If yes, who said what and when?**

No.

**Are you aware of any other indicators that would show that the Complainant was discriminated against due to her age and sex?**

No.

**Do you have any additional documentation, evidence, or witnesses which support your contentions in this matter?**

Ann and Carl would be the best people to talk to.

**Is there anything else you want me to know about this case?**

If you look at most of the people in the hiring process, they were women in the same category as the Complainant and they are very supportive of women and more senior employees. The Complainant was not discriminated against in this process.

The ceiling may be about two issues. When the ceiling was originally created, there were fewer senior people, and it didn't create the feeling of unfairness that it does now. The graying of the agency in terms of employees who stay a long time can create budget issues, and some people may view promotions to a certain GS level as a function of tenure, when it isn't, it is a skill set.

I have read the above statement, consisting of 7 pages. I declare under the penalties of perjury that my statement is true, correct, and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

Executed on: 12-7-04.

Witness Signature _Wally Mitty_

Investigator Signature _Karen Osler_