Woods v. Johnson,
Civil Action No. 06-1460 (HHK)
Ex. 16

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

- - - - - - - - - - - - - - - - - x
REBECCA WOODS,                    :
                                  :
    Complainant,                  :
                                  : EEOC NO. 100-2005-00418X
    v.                            :
                                  : Agency No. 2004-0042-HQ
MICHAEL LEAVITT, Administrator,   :
Environmental Protection Agency,  :
                                  :
    Agency.                       :
                                  :
- - - - - - - - - - - - - - - - - x

Washington, D.C.

Wednesday, November 23, 2005

Deposition of

ANNE PONTIUS

a witness of lawful age, taken on behalf of the Complainant in the above-entitled action, before Andrew N. Schachter, Notary Public in and for the District of Columbia, in the offices of Swick and Shapiro, P.C., 1225 Eye Street, Northwest, Suite 1290, Washington, D.C., 20005, commencing at 11:07 a.m.

2

APPEARANCES:

   On Behalf of the Complainant:

      DAVID H. SHAPIRO, ESQ.
      Swick and Shapiro, P.C.
      1225 Eye Street, N.W., Suite 1290
      Washington, D.C. 20005
      (202) 842-0300

   On Behalf of the Agency:

      PAUL M. WINICK, ESQ.
      Attorney Advisor
      Employment Law Practice Group
      Finance and Operations Law Office
      Office of the General Counsel
      U.S. Environmental Protection Agency
      1200 Pennsylvania Ave., N.W.
      Mail Code 2377A
      Washington, D.C. 20004
      (202) 654-5687

   Also Present:

      Rebecca Woods, Complainant

* * * * *

C O N T E N T S

EXAMINATION BY:                                    PAGE

   Counsel for Complainant                       3

3

PROCEEDINGS

Whereupon,

ANNE PONTIUS

was called as a witness herein and, having been first duly sworn, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR COMPLAINANT

BY MR. SHAPIRO:

Q    Could you state your full name please, ma'am.

A    Anne Marie Pontius.

Q    And your home address?

A    ███████████████████████████████████

Q    ███████████

A    ███████████████

Q    And your home telephone?

A    ███████████

Q    You are a college graduate?

A    Yes.

Q    And where did you go to college?

A    I went to Michigan State University.

Q    And when did you graduate?

A    1977.

```
1    A    No profession at all.
2    Q    Is there anything like that?
3    A    No professional societies.
4    Q    Okay.  Good.  You are currently with EPA.
5    A    Yes.
6    Q    And what is your current job?
7    A    My current job is the director of the policy
8  and program evaluation division, the Office of Site
9  Remediation Enforcement.
10   Q    That is the in the Office of Site Remediation?
11 So that is the higher level, Office of Site
12 Remediation?
13   A    Yes.
14   Q    Remediation --
15   A    Enforcement.  And that is an office in OECA.
16   Q    That is the Office of -- OECA is?
17   A    Office of Enforcement and Compliance
18 Assurance.
19   Q    All right.  And how long have you been in that
20 job?
21   A    Since November 14th.
22   Q    Your prior job was what?
```

48

1   Q   Did you --
2   A   There is no person in my mind right now.
3   Q   Good. Did you participate in the promotion of
4   a 14 when you were the director or acting?
5   A   Yes, I did.
6   Q   Okay. The first one that you did was who?
7   A   Yvette Hellyer.
8   Q   Yvette Hellyer?
9   A   Yes.
10  Q   That is H-e --
11  A   -- l-l-y-e-r.
12  Q   And is she a lawyer or an environmental
13  protection specialist?
14  A   She is a biologist.
15  Q   Biologist.
16  A   I believe.
17  Q   A biologist. So she is not an environmental
18  protection specialist or an attorney.
19  A   She is part of the technical staff.
20  Q   Technical staff. Now the technical staff
21  means no specialized scientists or does that include
22  lawyers?

Diversified Reporting Services, Inc.
1101 Sixteenth Street, NW Second Floor
Washington, DC 20036
(202) 467-9200

49

1    A    Technical staff, I would say, is the
2    non-attorneys.
3    Q    Non-attorneys, okay.
4    A    That is the broad interpretation.
5    Q    Now what series is she in? Is she in a
6    different series from environmental specialist?
7    A    I believe she is.
8    Q    Okay. So a biologist is a special series. It
9    is a scientific series.
10   A    Okay.
11   Q    Okay. Is that a yes?
12   A    I believe so.
13   Q    Okay. So what is the career ladder for that
14   series? Does it go up to 14?
15   A    I don't know.
16   Q    Was anyone else -- were you the selecting
17   official for that?
18   A    I was.
19   Q    Okay. So was there anybody else? Did you
20   have a vacancy announcement for that?
21   A    I was given a one technical 14 position and I
22   was asked to look at all of my eligible GS-13 technical

50

1   staff.
2   Q   Technical staff being everybody --
3   A   Any non-attorney.
4   Q   Non-attorney. So you couldn't make a --
5   A   At the GS-13 level.
6   Q   So you couldn't make an attorney who was a 13
7   a 14 under this authority.
8   A   No.
9   Q   You -- unless they were willing to leave being
10  an attorney. Could they have done that?
11  A   I suppose.
12  Q   Okay. But you were told that you should look
13  at all your eligible 13's.
14  A   Yes.
15  Q   And how did you know if somebody was eligible?
16  A   I have a list of people --
17  Q   Whose getting grade --
18  A   Their grade and their level and how long. Or
19  I had a list.
20  Q   Okay. Did you interview them?
21  A   No.
22  Q   No. All right. And you decided that Hellyer

51

1  was the one you wanted to give the 14 to.
2      A    Yes.
3      Q    And so you --
4      A    Not on my own.  I had input from other
5  managers.
6      Q    Who did you have input from?
7      A    My associate director and the two branch
8  chiefs.
9      Q    And who was your associate director?
10     A    Stephanie Brown.
11     Q    Okay.  She is a lawyer.
12     A    She is a lawyer.
13     Q    And who were the two branch chiefs?
14     A    Gerry Stubbs and Carl Eichenwald.
15     Q    Okay.  And they interviewed the candidates as
16  well?
17     A    No.  There was no interview.
18     Q    So you could have chosen anybody in either
19  branch who was not a lawyer who was an eligible 13
20  person.
21     A    My candidate pool was any non-attorney GS-13.
22     Q    Did anybody know that there was a competition

1   going on?

2   A   No. I mean, the managers in the Office of
3   Regulatory Enforcement.

4   Q   Right. Did anybody feel out any of the
5   eligible pool as to whether they were staying, whether
6   they were looking for other jobs, whether they were
7   planning to leave?

8   A   No.

9   Q   Okay. So and who told you that you had this
10  14?

11  A   That would have -- it probably was Walker
12  Smith.

13  Q   And Walker Smith is whom?

14  A   She is the director of the Office of Civil
15  Enforcement.

16  Q   So she was your boss.

17  A   Yes. I mean, it may have been David Nielsen,
18  her deputy at the time. One or the other.

19  Q   And so you sat down with Carl, Gerry and --

20  A   Stephanie.

21  Q   -- Stephanie?

22  A   Mm-hmm.

53

1   Q   And you also then discussed who they -- who
2   everybody thought should get the 14.
3   A   Yes.
4   Q   You said these are the people that could get
5   it. Who do you think should get it and was there --
6   A   We asked each branch chief who in their branch
7   they would recommend.
8   Q   They would recommend. And who did Carl
9   recommend?
10  A   Brian Dyer.
11  Q   Brian Dyer. And was Hellyer in his branch or
12  is she in --
13  A   She was in Gerry's branch.
14  Q   Okay. And who did Gerry recommend?
15  A   Yvette Hellyer.
16  Q   All right. And who did you consider?
17  A   I considered -- I mean, I looked at everybody
18  on the list.
19  Q   But you considered those two.
20  A   Well, I took -- yes, I mean, there -- well --
21  Q   They were your two best qualifieds.
22  A   Well, there was one other person that I

54

1   actually considered.
2       Q   Who is that?
3       A   Tony Ellis.
4       Q   Tony Ellis. Okay. And --
5       A   The top three candidates.
6       Q   But --
7       A   But I was only filling one slot.
8       Q   Right, but Ellis was working for Stubbs.
9       A   Yes.
10      Q   And Stubbs recommended Hellyer not Ellis.
11      A   Well, he had -- yes, I mean, I think in terms
12  of --
13      Q   So how did you come to consider Ellis if
14  Stubbs said Hellyer is the person?
15      A   Well, we just had a conversation about all the
16  people that were best qualified.
17      Q   And those were the three people that you --
18      A   Of the people, those were the top three people
19  and I think at the time I had six people that were
20  eligible.
21      Q   And who were the other eligibles?
22      A   Rebecca Woods was one of the eligible, Randy

```
 1   Morris and Beth Burchard.
 2       Q    And Morris is in Washington?
 3       A    He is in Denver.
 4       Q    He is in Denver.  Who else is in Denver?
 5       A    Bill Palmer.
 6       Q    Who supervises out in Denver?
 7       A    Gerry Stubbs.
 8       Q    So he supervises from a distance.
 9       A    He does.
10       Q    So Rebecca Woods was a 13?
11       A    Yes.
12       Q    And so was Morris?
13       A    Yes.
14       Q    And so was Burchard.
15       A    Yes.
16       Q    Are they still?
17       A    Yes.
18       Q    All GS-13's.
19       A    Yes.
20       Q    Okay.  And were they all -- they were all
21   eligible.  Were they all qualified?
22       A    I would say the are all qualified.
```

1    Q    So they are both eligible and qualified.

2    A    Mm-hmm.  Yes.  Sorry.

3    Q    All right.  So you considered the two people who the branch chief said each recommended and Mr. Ellis as well.

6    A    Yes.

7    Q    Did you ask Stubbs about Ellis as compared to Hellyer and why he was recommending Hellyer instead of Ellis?

10   A    Well, it was more a group discussion about we had one opportunity to promote somebody.  Who should we promote.  We typically had group discussions as a management team and so we came to a group consensus that Yvette was the --

15   Q    Person most deserving.

16   A    Person that, yes, most deserving that we would put forward.

18   Q    And you were the selecting official you said.

19   A    Well, I have --

20   Q    You might have --

21   A    I had discussions with my office director and my deputy office director.

Diversified Reporting Services, Inc.
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

57

1    Q    Well, you had to get their approval.

2    A    I did.

3    Q    They were the approving official, but you were
4 the selecting official.

5    A    I think that is how it worked.

6    Q    Okay.  So why not a formal application process
7 where there is aboveboard competition open for anybody
8 to see, personnel is involved, panelists to make these
9 cuts and interviews.  Why not the formal process?

10   A    I believe it is a management -- management's
11 prerogative to --

12   Q    Management's prerogative.

13   A    -- evaluate their employees and, you know,
14 select --

15   Q    Above their career ladder just like that.

16   A    That is how the office is operated, the Office
17 of Regulatory Enforcement when there was -- they are
18 very rare to get a 14 above the career ladder, a
19 technical 14.

20   Q    Even more reason to have a transparent,
21 aboveboard competition for these rare plums.

22        MR. WINICK:  Objection.  Is that a question?