```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

REBECCA L. WOODS,                    )
                                     )
        Plaintiff                    )
                                     )
    v.                               )  Civil Action No. 06-1460(HHK)
                                     )
STEPHEN L. JOHNSON,                  )
 Administrator,                      )
 U.S. Environmental Protection Agency,)
                                     )
                                     )
        Defendant.                   )
_____)
```

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

An oft-quoted legal standard for purposes of summary disposition of a case is that "[a] party opposing a motion for summary judgment must point to more than just 'a scintilla of evidence' to support [her] position," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Specifically, "there must be evidence on which [a] jury could reasonably find for the plaintiff." id. at 249-50. Evidence that is "merely colorable" or "not significantly probative" will not defeat a motion for summary judgment. Id.

Defendant, Stephen L. Johnson, Administrator, United States Environmental Protection Agency ("EPA" or "Agency"), moved for summary judgment in this case brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., relying on undisputed facts as evidenced by and specifically identified in the record. As explained below, a

clear indication that Plaintiff's claims lack merit is her reliance in her opposition memorandum on opinion and innuendo, and evidence that is insufficiently probative.[1] In short, Plaintiff's opposition memorandum simply fails to identify a genuine issue in dispute for purposes of trial, and thus, Defendant is entitled to judgment as a matter of law.

**ARGUMENT**

I. **Plaintiff's "Evidence" Regarding Her Non-Promotion Claim Lacks Sufficient Probative Value for Purposes of Defeating Defendant's Motion for Summary Judgment.**

Plaintiff's discrimination claim based on her non-selection for a promotion to the GS-14 level is essentially a dispute over job qualifications. Plaintiff believes that she was better qualified for promotion than her colleagues who were selected for the two available positions, but not one of the four supervisors substantively involved in the promotion determination came to that conclusion.

Pertinent here, in 2004, the Toxics and Pesticides Enforcement Division ("TPED") within the EPA's Office of Enforcement received the opportunity to promote two individuals from the GS-13 to the GS-14 level. Def.'s Mot. Summ. J., Ex. 6, Sworn Statement of Ann Pontius, at 2 (Dec. 2, 2004). All

---

[1] Indeed, certain claims raised by Plaintiff and discussed in her opposition memorandum - notably those that fail to allege an adverse action - were fully addressed in Defendant's Motion for Summary Judgment such that Defendant will not repeat his arguments herein. Def.'s Mot. Summ. J., pp. 23-30.

eligible GS-13 employees were considered for promotion including Plaintiff.  Id. at 1-2. Ann Pontius, Director of TPED and Plaintiff's second line supervisor, consulted with her management team about the promotions.  Id.  Gerry Stubbs and Carl Eichenwald who respectively served as Chief of the TPED's Western and Eastern Branches provided their recommendations on the candidates who should receive the GS-14 promotions.  Id.  The management team looked at a number of factors in assessing eligible candidates including quality of work product, ability to interact with all levels of the agency, and ability to represent the office to outside constituencies. Def.'s Mot. Summ. J., Ex. 11, Sworn Statement of Carl Eichenwald, at 2 (Dec. 3, 2004). However, the level of independence under which the employee performed was considered a critical factor in the promotion determination.  Id.  Tony Ellis, who worked in the Western Branch, and Brian Dyer, who worked in the Eastern Branch, were recommended for the promotions.  Id. at 2.

　　Tony Ellis had worked in Enforcement since 1986, well before Plaintiff came into the program (in 1989), and thus, had been doing enforcement work for many years prior to the promotion determination at issue.  Ex. 18, Deposition of Gerald Stubbs, 57:19 to 57:22 (Aug. 30, 2007)(attached hereto).  Mr. Stubbs regarded Mr. Ellis as a top shelf promotion candidate, insofar as Mr. Ellis had consistently been a "workhorse," taking on a large

3

volume of high profile cases, taking initiative, working independently, and exhibiting knowledge and expertise expected from a GS-14.  Ex. 19, Declaration of Gerald Stubbs, ¶ 7 (Jan. 3, 2006)(attached hereto).  Ms. Pontius shared Mr. Stubbs' views on Mr. Ellis's professional drive and demonstrated contributions to the TPED. As noted in Defendant's Motion for Summary Judgment, Ms. Pontius characterized Tony Ellis as one of the most productive employees in terms of cases. Def.'s Mot. Summ. J., Ex. 6, Pontius Sworn Statement, at 3-4; see also Ex. 12, Memorandum from Walker B. Smith to John Peter Suarez, p. 2, Jan. 8, 2004 (noting that, in Fiscal Year 2003, Mr. Ellis had done more audit cases than any other TPED staffer).  Ms. Pontius further noted that Mr. Ellis helped set up a new center in Denver and all the operating procedures there.  Def.'s Mot. Summ. J., Ex. 6, Pontius Sworn Statement at 4.

   Mr. Dyer was similarly regarded.  Mr. Dyer has what Mr. Eichenwald considers to be an entrepreneurial approach to his work meaning that Mr. Eichenwald does not have to "go out and assign" matters to him.  Def.'s Mot. Summ. J., Ex. 11, Eichenwald Sworn Statement, at 4.  Mr. Stubbs, who had supervised Mr. Dyer from 1991 to the later 1990's, also characterized Mr. Dyer as a go-getter. Ex. 19, Stubbs Decl. ¶ 12.  Like Messrs. Stubbs and Eichenwald, Ms. Pontius noted that Mr. Dyer showed a great deal of initiative.  Def.'s Mot. Summ. J., Ex. 6, Pontius Sworn

4

Statement, at 4. Ms. Pontius pointed out Mr. Dyer's development of an initiative to help better protect U.S. borders from chemicals, and his nurturing of a positive relationship with the Border Patrol such that the EPA knew what was coming into the country. Id. Ms. Pontius also noted that Mr. Dyer stepped in to take over the technical portion of one of the Division's biggest cases when he did not have expertise in the area and had to educate himself. Id. Further, Mr. Dyer also took over the position of web master. Id.

Although Ms. Pontius recommended Messrs. Ellis and Dyer for promotion, Walker Smith, Office Director of the Office of Regulatory Enforcement, Office of Enforcement and Compliance and Assurance, and David Nielson, a former Deputy Director, were the authorities responsible for making the promotion determinations, and in this instance, decided that Messrs. Dyer and Ellis should receive the promotions. Def.'s Mot. Summ. J., Ex. 7, Sworn Statement of Walker Smith, at 3-4 (Dec. 7, 2004). Ms. Smith's reasons for the promotion determinations were reflected in written memoranda discussing both Messrs. Ellis's and Dyer's accomplishments on behalf of the Division and the Agency. Def.'s Mot. Summ. J., Ex. 12, Memoranda from Walker B. Smith to John Peter Suarez, Jan. 8, 2004. Notably, in Ms. Smith's assessment, Messrs. Dyer and Ellis had taken on bigger responsibility than

5

Plaintiff. Def.'s Mot. Summ. J., Ex. 7, Walker Sworn Statement, at 3.

Plaintiff believes that she should have received one of the promotions, and because she did not, suggests that the promotion determinations were tainted with discriminatory animus based on sex and age. Plaintiff makes this charge notwithstanding the fact that the two most senior supervisors who were involved in the promotion determinations at issue are women, both older than Plaintiff. See Def.'s Mot. Summ. J., Ex. 6, Sworn Statement of Ann Pontius, p. 1 ((Dec. 2, 2004) and Ex. 7, Sworn Statement of Walker Smith, p. 1 (Dec. 7, 2004); see also Horvoth v. Thompson, 329 F.Supp.2d 1, 5 (D.D.C. 2004)(harder to establish gender discrimination when selecting official same gender as plaintiff).

Plaintiff also avers that she should have been selected because she served as "the national expert" on the three statutes identified in the Environmental Protection Specialist GS-14 position description. See Pl.'s Op. to Def.'s Mot. Summ. J., at 4; see also Def.'s Mot. Summ. J., Ex. 8. Except for Plaintiff's own opinion in this regard, there is nothing in the record evidencing that any management official shared this view. Indeed, Mr. Stubbs, whom Plaintiff viewed favorably as a supervisor (Def.'s Mot. Summ. J., Ex. 1, Deposition of Rebecca Woods, 35:22 to 36:3 (Oct. 4, 2007)), states unequivocally that Plaintiff did not have a higher level of technical expertise than the other

team members.  Ex. 18, Stubbs Depo. 60:11 to 60:13.  Even the two colleagues with whom Plaintiff worked and who viewed her work favorably did not go so far as to say that Plaintiff was "the national expert" in the three statutes for which the TPED had responsibility.  Pl.'s Op. to Def.'s Mot. Summ. J., Ex. 6, Declaration of James Handley, Feb. 10, 2006 and Ex. 7, Declaration of Kathy Clark, Feb. 16, 2006.

Notwithstanding this point, Plaintiff's self-serving opinion that she served as "the national expert" on the three statutes for which the TPED was responsible misses the mark for purposes of evidencing a discrimination claim. "[I]n order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination." Jackson v. Gonzalez, 496 F.3d 703, 707 (D.C. Cir. 2007), quoting, Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006).

Here, Plaintiff's personal opinion as to her status as a national expert falls far short of constituting competent evidence for purposes of defeating Defendant's dispositive motion. See Tolson v. James, 315 F.Supp. 2d 110, 113 (D.D.C. 2004); see also Waterhouse v. District of Columbia, 124 F.Supp.2d 1, 7 (D.D.C. 2000)(For purposes of showing pretext, a "plaintiff's perception of [her]self, and of [her] work performance, is not relevant.") Vasilevsky v. Reno, 31 F.Supp.2d 143, 150 (D.D.C. 1998)("Plaintiff's argument with respect to the

comparison of her qualifications with those of the selected candidates truly misses the point. It is the plaintiff's duty to put forth evidence of discrimination not to 'quibble about the candidates' relative qualifications.'") (citation omitted); Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183-1184 (D.C. Cir. 1996); Simms v. Oklahoma et rel. Dept. of Mental Health and Substance Abuse Services, 165 F.3d 1321, 1329 (10th Cir. 1999) cert. denied, 528 U.S. 815 (1999).

   The record demonstrates that Mr. Ellis started working on enforcement programs approximately three years before Plaintiff, and that Mr. Dyer started working on those same programs approximately two years after Plaintiff. Ex. 18, Stubbs Depo. 57:19 to 57:22; Ex. 19, Stubbs Decl. ¶ 12. Although the record reflects that TPED management regarded these two as go-getters, the same cannot be said for Plaintiff. Mr. Stubbs notes that Plaintiff's transfer from the Western Branch to the Eastern Branch in 2000 at which time she came under the supervision of Mr. Eichenwald was effectuated to align staff under the appropriate branches to which the employees' programmatic responsibilities were assigned. Ex. 19, Stubbs Decl. ¶ 7. However, as explained by Mr. Stubbs, Ms. Woods was also reassigned because it seemed to both Mr. Stubbs and Mr. Eichenwald that Plaintiff needed to do something to "reenergize" herself. Id. A critical reason why TPED management did not view

8

Plaintiff's candidacy for promotion favorably was due to Plaintiff's failure to demonstrate the initiative and independence expected of employees at the GS-14 level.[2]  Def.'s Mot. Summ. J., Ex. 4, Eichenwald Sworn Statement, at 4 and Ex. 7, Smith Sworn Statement.

Clearly disappointed with the promotion decisions, Plaintiff now asks the Court to reassess TPED management's eminently reasonable business decision.  Her request, however, is nothing more than an invitation to the Court to second guess the promotion decisions at issue – an invitation that the court should decline.  Horvoth, 329 F.Supp.2d 1, 7 (D.D.C. 2004), citing, Stewart v. Ashcroft, 352 F.3d 422, 403 (D.C. Cir. 2003); see also Skelton v. ACTON, 686 F.Supp.2d 25, 26 (D.D.C.

---

[2] Plaintiff attempts to demonstrate that she was in fact qualified for the GS-14 promotion based on an earlier attempt by Mr. Stubbs to obtain a promotion for her.  Pl.'s Op. to Def.'s Mot. Summ. J. at 2.  However, the record reflects that, in 1995, Mr. Stubbs attempted to obtain promotions, not just for Plaintiff, but others who were "eligible."  Ex. 18, Stubbs Depo. 64:19 to 64:21.  This in no way suggests that TPED management's promotion decision in 2005, based on assessment of eligible employees, was unreasonable, or more to the point, somehow tainted with an unlawful animus.

In an attempt to undermine Ms. Pontius's credibility, Plaintiff avers that Ms. Pontius admitted in her deposition that Ms. Woods was working at the GS-14 level.  Pl.'s Op. to Def.'s Mot. Summ. J., at 13.  Ms. Pontius, however, does not unequivocally state that Ms. Woods is deserving of a GS-14.  Def.'s Ex. 20, Deposition of Anne Pontius, 81:7 to 81:20 (Nov. 23, 2005)(attached hereto).  On this issue, Ms. Pontius stresses that she was not Plaintiff's supervisor, and also expresses a general desire to obtain GS-14's for all her technical staff.  Id. 81:20 to 82:6.

9

1987)("Unless the employer's choice of candidates can be shown to have been tainted by unlawful discrimination, it must be allowed to stand, no matter how unwise it may seem to the disappointed applicant.")

    Plaintiff makes a number of insufficiently probative points in her attempt to defeat Defendant's Motion for Summary Judgment on the failure to promote claim.  First, she alleges that she was denied the opportunity to compete for the positions.  Pl.'s Op. to Def.'s Mot. Summ. J., at 1-2, and 11.  She suggests that the promotion process used here ran afoul of the EPA's governing policy and that such irregularity raises the necessary inference that Plaintiff's non-selection was tainted by discrimination. However, the only credible evidence introduced concerning the legitimacy of the promotion process at issue comes from the Agency's former Office of Human Resources ("OHR") supervisory personnel specialist, Chuck Smith, who confirmed its validity. Def.'s Mot. Summ. J., Affidavit of Charles H. Smith, Dec. 4, 2007.

    Rather than produce straightforward, credible evidence that the EPA promoted Messrs. Ellis and Dyer in an irregular fashion in contravention of governing regulations, Plaintiff offers her own personal interpretation of the regulatory framework for the proposition that EPA ran afoul of its merit promotion policy.

Although Plaintiff may sincerely believe that to be the case, her "belief" in this regard does not constitute sufficient evidence to place this matter in dispute. See Campbell-El v. District of Columbia, 874 F.Supp. 403, 407 (D.D.C. 1994)("Beliefs are not fact", and a plaintiff, to defeat a defendant's motion for summary judgment, must assert facts.)  Plaintiff possesses no expertise in the personnel field, has no work experience or educational background in that discipline, and her opinion thus is insignificantly probative.  Defendant notes further that Plaintiff does not offer any expert evidence concerning her theory that Messrs. Ellis and Dyer were promoted in a questionable manner.

More telling for purposes of revealing the lack of merit in Plaintiff's argument is the fact that the same promotion process was used by TPED on three occasions prior to the promotions at issue in this case.  Ex. 19,Stubbs Depo. 39:11 to 39:21.  EPA employees Yvette Hellier, Mary McDonald, and Brenda Mosley all received promotions as the result of a process similar to the one pertinent here. Id.

Yvette Hellyer was the TPED employee promoted just before Messrs. Dyer and Ellis.  Ex. 20, Pontius Depo., 48:3 to 56:1; 59:11 to 59:15.  As in this case, Ms. Pontius was asked to look at all eligible GS-13 technical staff for consideration.  Id. 49:21 to 50:13.  Also, as in this case, none of the eligibles

11

were interviewed. Id. 50:20 to 50:21. Again, similar to this case, Ms. Pontius did not make the decision on her own, but received input from Stephanie Brown, her associate director, and Gerry Stubbs and Carl Eichenwald. Id. 50:22 to 51:14. The branch chiefs were asked who in their branch they would recommend. Id. 53:1 to 53:7. Carl Eichenwald recommended Brian Dyer and Gerald Stubbs recommended Ms. Hellyer.[3] Id. 53:8 to 53:15. Ms. Hellyer received the slot.

---

[3] Plaintiff attempts to create a genuine issue in dispute by averring that Ms. Pontius was not being truthful when stating that Mr. Eichenwald was involved in the Hellyer promotion process. Pl.'s Op. to Def.'s Mot. Summ. J., at 17-18. Plaintiff's efforts in this regard are disingenuous. In December 2004, Ms. Pontius provided a declaration as part of the EEO investigation explaining the promotion process at issue here. Def.'s Mot. Summ. J., Ex. 6. In December 2005, Ms. Pontius submitted a declaration to support Defendant's dispositive motion before the Equal Employment Opportunity Commission ("EEOC"). Pl.'s Op. to Def.'s Mot. Summ. J., Ex. 19. In her December 2005 declaration, she explained the processes resulting in the promotions of Ms. Hellyer, in the first instance, and Messrs. Dyer and Ellis, subsequently. Id. The fact that Ms. Pontius did not elaborate on the process resulting in the promotion of Ms. Hellyer in her sworn statement for the EEO investigation does not suggest that she was untruthful in her statement about that process in her December 2005 declaration submitted with the Agency's dispositive motion to the EEOC, including noting Mr. Eichenwald's participation in the process.
   Further, Mr. Eichenwald's testimony that Mr. Dyer was the first employee that he promoted over the career ladder level does not undermine Ms. Pontius's credibility. In fact, Ms. Hellyer was Mr. Stubbs' choice for promotion during that initial round. Ex. 20, Pontius Depo. 53:8 to 53:15. Mr. Dyer was Mr. Eichenwald's choice for promotion, and again, during the promotion process at issue here. Id. Mr. Eichenwald was successful the second time around apparently resulting in his "first promotion" of an employee to the GS-14 level.

Thus, although Plaintiff may have personally desired that TPED management use a different promotion process[4], the record devoid of any evidence that the process used was created or selected for purposes of discriminating against Plaintiff. See also Fischbach, 86 F.3d at 1183, quoting Milton v. Weinberger, 696 F.2d 94, 199 (D.C. Cir. 1982)("Even if a court suspects that a job applicant 'was victimized by [ ] poor selection procedures' it may not 'second-guess an employer's personnel decision *absent demonstrably discriminatory motive*.'")(emphasis added).

In her opposition, Plaintiff makes a number of other meritless arguments in an attempt to defeat disposition in Defendant's favor. Plaintiff avers that "Mr. Eichenwald. . .frequently attended all-male coffee hours in Mr. Ellis's office to which no female staff member was ever included." Pl.'s Op. to Def.'s Mot. Summ. J., p. 13. Such an allegation does not suggest discriminatory animus in the promotion determinations at issue here, nor specifically on the part of Mr. Eichenwald. At best, it

---

[4]Even if Plaintiff were correct that the Agency should have engaged in a different promotion process limiting competition to TPED eligible employees, the unrebutted testimony of the persons who made the promotion decision is that every single one of the eligible non-attorney GS-13s in TPED, including Plaintiff, was in fact considered for promotion. The record reflects that those supervisors with the most intimate knowledge of the performance histories, work responsibilities and capabilities, and accomplishments of the "applicant pool" reached a consensus as to whom among such individuals most merited a promotion to the GS-14 level. Thus, Plaintiff's argument that she was denied the chance to "compete" elevates form over substance, and as such, is without merit.

suggests occasional socializing in the office among male colleagues which does happen in the workplace and which is not unlawful conduct (or probative of an unlawful animus).  Besides, given that it was Mr. Ellis who was apparently holding these gatherings, Plaintiff's ill-feelings are perhaps misdirected.

Plaintiff additionally disputes that she "checked in" too much, a concern, according to Plaintiff, expressed by Mr. Eichenwald, her supervisor.  Pl.'s Op. at 22; see also, Def.'s Mot. Summ. J., Ex. 1, Woods Depo. 71:10 to 71:44.  However, Plaintiff's perception in this regard is of no moment. Plaintiff presents no evidence of the work practices of Messrs. Dyer and Ellis with respect to their interactions with management.  Thus, she cannot create a disputed issue of fact based solely on her perceptions of her own conduct and a lack of any evidence suggesting an understanding of the frequency with which Messrs. Ellis and Dyer sought direction from their respective supervisors.  As far as Plaintiff's other assertion that Mr. Eichenwald's criticism of a single work product was a rationale he offered for her non-selection, Pl.'s Op. at 23, Defendant notes that Mr. Eichenwald advised Plaintiff of her non-selection in the context of an annual performance appraisal. Def.'s Mot. Summ. J., Ex. 1, Woods Depo. 69:24 to 70:16.  In any event, Defendant does not claim that Plaintiff's non-selection was premised on this one incident alone, as opposed to being

based on management's consensus judgment that Messrs. Ellis and Dyer had been, historically, for a substantial number of years, the clearly superior performers who merited the limited promotions available to TPED.

In summary, Plaintiff does not provide the Court with any probative evidence demonstrating that there is a material issue in dispute related to the promotion determination here for purposes of defeating Defendant's motion for summary judgment. Accordingly, Defendant respectfully requests that the Court grant its Motion and dismiss Plaintiff's discrimination claim.

**II.   Plaintiff Cannot Establish a Prima Facie Case of Retaliation Based on the Delay in Processing Her Flexiplace Request.**

In Burlington Northern v. White, 126 S.Ct. 2405 (2006), the Supreme Court states, in part, that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . .[thus,] a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which. . .means it well might have dissuaded a *reasonable worker* from making or supporting a charge of discrimination.'" Id. at 2414-15, citing Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)(quoting Washington v. Illinois Dept. of Revenue, 420 F.3d 458, 662 (7th Cir. 2005)(emphasis added).

With respect to Plaintiff's assertion in her opposition memorandum that the Supreme Court's holding in Hishon v. King &

15

Spaulding, 467 U.S. 69, 74 (1984) stands for the proposition that her deferred receipt of Flexiplace approval constitutes a cognizable adverse action, Defendant submits that Plaintiff has misconstrued the decision.  First, the EPA never *refused* to grant Plaintiff the right to participate in Flexiplace.  There is a significant and obvious difference between an employer's outright refusal to grant an employment right as was the case in Hishon and an employer's relatively modest delay in granting such right.  The latter, applicable here, is not cognizable under Title VII, and the Hishon decision suggests nothing to the contrary.  Indeed, a number of courts have concluded that the outright denial of requests to work from home or for an alternative schedule is not an adverse action.  See,e.g. Fitzhugh v. Topetzes, Civil Action No. 1:04-CV-3258-RWS, 2006 WL 2557921, *6 (N.D.Ga. Sept. 1, 2006)(discussing cases in which courts conclude that even the denial of an alternative work schedule is not considered an adverse action.); Nasis-Parsons v. Wayne, No. 4;05CV36, 2006 WL 1555913, *8 (E.D.Va. June 1, 2006)(limiting or ending plaintiff's privilege to participate in AWS is not an adverse action); Daniels v. Federal Reserve Bank of Chicago, No. 98C1186, 2006 WL 861969, *12 (N.D.Ill. March 31, 2006)(denial of request to work from home while recuperating from surgery and denial of request to work flextime or an alternative work schedule is not an adverse action).

16

**CONCLUSION**

For reasons presented in his dispositive motion and this reply, Defendant respectfully requests that the Court grant his summary judgment and dismiss Plaintiff's complaint in its entirety with prejudice.

Respectfully Submitted,

/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the
  District of Columbia, Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-Mail: beverly.russell@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on Thursday, February 7, 2008, service of **Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgement** was made by the Court's Electronic Case Filing System to:

David H. Shapiro
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W., Suite 1090
Washington, D.C.  20005

dhshapiro@swickandshapiro.com

/s/ Beverly M. Russell
_____
Beverly M. Russell
Assistant U.S. Attorney