1 (Pages 1 to 4)

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Def.'s Ex. 18

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - -x
REBECCA L. WOODS,            :
          Plaintiff          :
     v.                      : Civil Action No.
                             :   06-1460 (HHK)
STEPHEN L. JOHNSON, Administrator, :
Environmental Protection Agency,   :
          Defendant.         :
- - - - - - - - - - - - - - - - -x

                    Washington, D.C.
                    Thursday, August 30, 2007
Deposition of
          GERALD STUBBS
a witness of lawful age, taken on behalf of the
Plaintiff, in the above-entitled action, before
KENYAN C. HOPCHAS, Notary Public in and for the
District of Columbia, in the offices of
Swick & Shapiro, 1225 Eye Street, N.W., Suite 1290,
Washington, D.C., commencing at 1:05 p.m.

          Diversified Reporting Services, Inc.
                   (202) 467-9200

Page 3

2007 OCT 24 PM 2: 49

CONTENTS

EXAMINATION BY:                              PAGE

Counsel for the Plaintiff                      4

STUBBS DEPOSITION EXHIBITS:

1 - Position announcement                     23

2 - Position description amendment            60

3 - Declaration of Gerald Stubbs              73

Page 2

APPEARANCES:
  On behalf of the Plaintiff:
    DAVID H. SHAPIRO, ESQ.
    SARAH RIGER, ESQ.
    Swick & Shapiro, P.C.
    1225 Eye Street, N.W., Suite 1290
    Washington, D.C. 20005
    (202) 842-0300

  On behalf of the Defendant:
    BEVERLY RUSSELL, ESQ.
    U.S. Attorneys Office for
    the District of Columbia
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 307-0492
    PAUL WINICK, ESQ.
    U.S. Environmental Protection Agency
    1201 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
ALSO PRESENT:
  REBECCA WOODS, Plaintiff

Page 4

1        PROCEEDINGS
2  Whereupon,
3        GERALD STUBBS
4  was called as a witness and, having been first duly
5  sworn, was examined and testified as follows:
6        EXAMINATION BY COUNSEL FOR PLAINTIFF
7        BY MR. SHAPIRO:
8   Q  Good afternoon. Could you state your name,
9  please, sir?
10  A  Gerald Bruce Stubbs.
11 
12
13
14
15
16
17
18
19
20
21
22

Page 53

1   A   She came in somewhere around the 1999
2   period.
3   Q   About the same time Eichenwald became
4   branch chief?
5   A   In that time frame.
6   Q   Who was the boss before Pontius?
7   A   Jessie Baskerville.
8   Q   He retired?
9   A   No. He moved down to Atlanta and took a
10  position down there. Now he's retired.
11  Q   Did Pontius come from within the division?
12  A   She did not.
13  Q   She came from outside the division?
14  A   She came from outside the division.
15  Q   She was an EPA employee?
16  A   Correct.
17  Q   Is she a lawyer?
18  A   She's not a lawyer.
19  Q   How about Eichenwald, was he a lawyer?
20  A   He's a lawyer.
21  Q   He came from within the division as a legal
22  job?

Page 54

1   A   He was a staff attorney.
2   Q   He was never an environmental protection
3   specialist?
4   A   Correct.
5   Q   You had been an environmental protection
6   specialist?
7   A   Correct, and I also had been a biologist.
8   Q   Before you were an environmental protection
9   specialist?
10  A   Yes, before I was a supervisor.
11  Q   You came in as supervisory environmental
12  protection specialist?
13  A   Correct.
14  Q   You came to that from a biologist job?
15  A   Yes.
16  Q   He came to his supervisory job as a lawyer
17  job?
18  A   Correct.
19  Q   And Pontius came there from outside the
20  division entirely, she never was a staff lawyer,
21  scientist or environmental protection specialist
22  within the division; correct?

Page 55

1   A   Correct.
2   Q   Stephanie Brown, she had recently arrived
3   from outside the division; correct?
4   A   Correct.
5   Q   Before I think you said Rebecca Woods had
6   worked for you until this reorganization in 1999 or
7   2000, the same time frame generally that Eichenwald
8   became the head of another unit?
9   A   She worked for me from June of 1994 to
10  roughly 1999.
11  Q   She actually worked for you before that, in
12  the preceding organization?
13  A   That's correct.
14  Q   When there were no lawyers?
15  A   That's correct.
16  Q   It was the same work for non-lawyers,
17  generally speaking?
18  A   Similar.
19  Q   She worked for you from the 1980s on;
20  correct?
21  A   I can't recall. Either late 1980s or early
22  1990s.

Page 56

1   Q   When she worked for you, you gave her good
2   performance appraisals, didn't you?
3   A   Yes.
4       MS. RUSSELL: Objection; relevance.
5       BY MR. SHAPIRO:
6   Q   You thought she was able; correct?
7       MS. RUSSELL: Objection to the form.
8       THE WITNESS: Restate that, please.
9       BY MR. SHAPIRO:
10  Q   You thought she was able?
11      MS. RUSSELL: Objection to the form; vague.
12  You can answer if you understand.
13      THE WITNESS: I thought that Rebecca did a
14  good job for me in that time period, from 1990 to
15  June of 1994 when she worked for me.
16      BY MR. SHAPIRO:
17  Q   In fact, you made her the team leader?
18  A   I believe she was a team leader.
19  Q   On her team was Mr. Ellis and Mr. Dyer;
20  right?
21  A   That's correct. They were part of the
22  team.

Page 57

1  Q  They were part of her team. She was the
2  leader of the team; correct?
3  A  Correct.
4  Q  In fact, she helped train both Dyer and
5  Ellis, didn't she? They were new employees?
6     MS. RUSSELL: Objection to the form; vague.
7     THE WITNESS: No.
8     BY MR. SHAPIRO:
9  Q  They weren't new employees?
10 A  No, she didn't help train them.
11 Q  She didn't?
12 Q  Weren't they junior employees when they
13 came in and they were on her team and they got
14 promoted with her saying yes, they're deserving, she
15 brought them along, didn't she?
16    MS. RUSSELL: Objection to the form; vague.
17    BY MR. SHAPIRO:
18 Q  Is that right?
19 A  Tony Ellis had been in the enforcement
20 program since 1986, long before Rebecca came into the
21 program. He had been doing enforcement work for many
22 years.

Page 58

1  Q  Who had the higher grade when Tony Ellis
2  joined?
3  A  Bryan Dyer came in roughly -- similar to
4  the time Rebecca did. The team leader was not a
5  mentor. The team leader was to organize, to help me
6  manage and oversee programs.
7  Q  In fact, she was the person that was
8  designated to stand in your stead when you were out,
9  and you designated her that, didn't you?
10    MS. RUSSELL: Objection to the form.
11    THE WITNESS: That's correct.
12    BY MR. SHAPIRO:
13 Q  Acting branch chief; correct? In your
14 absence?
15 A  She among others were the acting branch
16 chief.
17 Q  Not Dyer and Ellis, they were not the
18 acting branch chiefs?
19 A  Not at that time.
20 Q  "That time" being up through 1994, when
21 Rebecca left your unit; correct?
22 A  I don't recall. In other words, they may

Page 59

1  have been acting.
2  Q  You can't recall it, can you?
3  A  No.
4  Q  You can recall Rebecca being acting?
5  A  Yes.
6  Q  At your direction; correct?
7  A  If I was absent, on travel.
8  Q  Not only at your direction, but with the
9  approval of the division director?
10 A  Right.
11 Q  In fact, she stood in for the division
12 director on occasion, didn't she?
13 A  I don't recall that.
14 Q  You don't? But it could be; right?
15    MS. RUSSELL: Objection.
16    BY MR. SHAPIRO:
17 Q  Is that right?
18 A  I don't recall.
19 Q  By saying you don't recall, you're not
20 saying it didn't happen, are you?
21    MS. RUSSELL: Objection; asked and
22 answered.

Page 60

1     BY MR. SHAPIRO:
2  Q  Sir?
3  A  I just don't recall.
4  Q  In fact, you thought Rebecca was not only
5  reliable but had a higher technical expertise than
6  the other members of her team; correct?
7     MS. RUSSELL: Objection.
8     THE WITNESS: I felt that Rebecca was
9  reliable.
10    BY MR. SHAPIRO:
11 Q  And she had a higher level of technical
12 expertise than the other members of her team?
13 A  No.
14    MR. SHAPIRO: Let's have this marked for
15 identification, shall we?
16    (Stubbs Deposition Exhibit No. 2
17     was marked for identification.)
18    BY MR. SHAPIRO:
19 Q  I'm showing you what has been marked for
20 identification, and it is a position description
21 amendment dated November 5, 1990. The employee
22 involved is Rebecca Torshia. That is Rebecca Woods

Page 61

1  isn't it? Sir? It's the same person, isn't it?
2      A    I'm sorry.
3      Q    Rebecca Torshia is the same as Rebecca
4  Woods; correct?
5      A    Yes.
6      Q    It says -- I am going to read what is
7  written here.
8          "Add as the final paragraph to the
9  employee's position description 'as a senior level
10 staff person, the employee will also serve as a
11 leader for a team of employees within the branch.
12 The team leader's responsibilities will be to assist
13 the branch chief and providing technical and
14 administrative guidance to the members of the team.
15         Specifically, the team leader will work
16 with the team members to develop work plans for
17 projects assigned by the branch chief, will review
18 the outputs of the team members for technical
19 accuracy and serve as the principal advisor to the
20 branch chief on technical matters in their areas of
21 expertise. The team leader will have no supervisory
22 responsibilities over team members.'

Page 62

1          It is signed here -- is that your signature
2  as supervisor, "Gerald Stubbs?"
3      A    Yes.
4      Q    You wanted this included in her position
5  description?
6      A    Yes.
7      Q    Who was on her team in 1990, on the team
8  that she led?
9      A    My recollection is Rhonda Norton, Bryan
10 Dyer, Tony Ellis.
11     Q    Bryan Dyer and Tony Ellis were both team
12 members?
13     A    To my recollection. Wait, I hadn't
14 finished.
15     Q    Sorry.
16     A    John Foley and Bill Vance.
17     Q    There were five members of the team plus
18 Rebecca, and that was half your unit, wasn't it?
19     A    That's my recollection.
20     Q    That was half your unit at the time?
21     A    I don't recall whether it was half the unit
22 or not. I don't recall how many people worked for me

Page 63

1  then.
2      Q    She worked with team members, including
3  Dyer and Ellis, to develop work plans for projects
4  assigned by you, to review the output of the team
5  members for technical accuracy, so she was reviewing
6  the products produced by Mr. Dyer and Mr. Ellis, as
7  well as the other people you mentioned, for technical
8  accuracy; correct?
9          MS. RUSSELL: Objection to the form.
10         BY MR. SHAPIRO:
11     Q    Sir?
12     A    It's certainly in the technical
13 description. I don't recall whether she actually
14 reviewed their work or not.
15     Q    She served as your principal advisor?
16     A    That's correct.
17     Q    On areas within their, that is her team
18 members' expertise; correct?
19         MS. RUSSELL: Objection to the form.
20         BY MR. SHAPIRO:
21     Q    That's what it says, within their areas of
22 expertise. The "their" relates to team members;

Page 64

1  correct?
2      A    I believe it does.
3      Q    Do you recall what you gave Ms. Woods for
4  her performance appraisals back in 2000, 2001, 2002,
5  and 2003?
6      A    I don't recall exactly.
7      Q    They were good appraisals, weren't they?
8      A    Yes.
9      Q    You thought well of her?
10     A    Yes, I thought well of Rebecca.
11     Q    Did she stay a team leader throughout the
12 rest of her time at your branch?
13     A    I don't recall the duration. We know we
14 had different team leaders at different times.
15     Q    Do you recall telling Ms. Woods in 1995 to
16 put paperwork together for her promotion?
17     A    I don't recall telling her that. I know
18 that was done.
19     Q    You wanted to promote her, didn't you?
20     A    I wanted to promote her and others that
21 were eligible.
22     Q    I'm not talking about others. I'm talking

Page 65

1  about her. You wanted to promote her to a 14, didn't
2  you?
3     A   The paperwork was put in at Jessie
4  Baskerville's request.
5     Q   You wanted to promote her, too?
6     A   My recollection is she talked to Jessie
7  Baskerville about the promotion and he asked me to
8  put the paperwork in.
9     Q   You did not want to promote her or did you
10 tell us accurately a few minutes ago that you wanted
11 to promote her?
12        MS. RUSSELL: Objection. That's
13 mischaracterizing his testimony.
14        BY MR. SHAPIRO:
15    Q   Which one is it? Did you want her
16 promoted?
17    A   I wanted people promoted that could
18 legitimately be promoted, and there were no
19 positions.
20    Q   But you supported her being promoted,
21 didn't you?
22        MS. RUSSELL: Objection; calls for

Page 66

1  speculation.
2         BY MR. SHAPIRO:
3     Q   Did you support her being promoted?
4     A   I went along with the submission.
5     Q   You went along with it or did you support
6  it?
7         MS. RUSSELL: Objection to the form.
8         THE WITNESS: I went along with it. Jessie
9  asked me to.
10        BY MR. SHAPIRO:
11    Q   Your boss wanted her promoted?
12    A   My boss asked me to do the paperwork.
13    Q   In 1998, Ms. Woods, through her own
14 initiative, obtained a detail to OPPT's Environmental
15 Systems Division; correct?
16    A   I don't believe it was on her own
17 initiative. I think there were some suggestions by
18 myself that the detail would be appropriate. That
19 was kind of joint.
20    Q   Joint, you and her?
21    A   Yes. At some point, I talked to Carl
22 Eichenwald because she did work for him as well.

Page 67

1     Q   In 1998, she worked for him? I thought in
2  1998, she worked for you and Eichenwald wasn't a
3  supervisor, he was a staff lawyer.
4     A   You're correct.
5     Q   I want you to remember.
6     A   I talked to Carl Eichenwald's predecessor,
7  John Jacobs.
8     Q   She didn't work for him. She worked for
9  you?
10    A   She worked for John Jacobs in the asbestos
11 program.
12    Q   She was in your branch?
13    A   She was in my branch, reported to me, but
14 since her actions and work reflected on the other
15 branch, we always coordinated.
16    Q   The idea behind this detail was to enhance
17 her level of knowledge for TSCA work; correct? That
18 unit did TSCA work?
19    A   That unit did TSCA work. I don't recall
20 that was the purpose.
21    Q   Do you recall the purpose?
22    A   I viewed it as a cooling off period.

Page 68

1     Q   "Cooling off?"
2     A   Yes.
3         MS. RUSSELL: Let him answer the question,
4  Mr. Shapiro.
5         THE WITNESS: Rebecca, at that period in
6  time, had withdrawn within the division. She wasn't
7  interacting with people. I thought she needed a
8  change of venue. I supported it based on that, that
9  change of venue.
10        BY MR. SHAPIRO:
11    Q   You supported it or you organized it?
12    A   Excuse me?
13    Q   Organized it or supported it?
14        MS. RUSSELL: Objection to the form; vague.
15        THE WITNESS: I worked with Rebecca. It
16 wasn't Rebecca saying to me and saying I want a
17 detail. I believe I suggested she go on a detail.
18 She talked about a detail. I think it was a joint
19 decision to put her on a detail.
20        BY MR. SHAPIRO:
21    Q   Who was it that you talked to and
22 coordinated with, the Eastern chief?

Page 69

1  A  Eastern branch chief. Prior to Carl
2  Eichenwald, it was John Jacobs.
3  Q  Where is he?
4  A  John Jacobs, he's in the Criminal office.
5  Q  He's a lawyer?
6  A  He's a lawyer.
7  Q  Criminal office where? What is the name of
8  the specific branch or unit?
9  A  I don't know. He works in EPA Office of
10  Criminal Enforcement. He's a lawyer working in that
11  office. I did that through the division director.
12  Q  Who was that?
13  A  Jessie Baskerville.
14  Q  Do you recall the mission contract?
15  A  The term is familiar but I don't recall.
16  Q  Let me try to refresh your recollection.
17  Upon her return from this detail to OPPT, you asked
18  her to take over the mission contract. Do you recall
19  that?
20      MS. RUSSELL: Objection; assumes facts.
21      THE WITNESS: I don't recall that.
22      BY MR. SHAPIRO:

Page 70

1  Q  Do you recall it was a major contract that
2  covered activities for numerous divisions under the
3  Office of Regulatory Enforcement?
4      MS. RUSSELL: Same objection.
5      THE WITNESS: I don't recall.
6      BY MR. SHAPIRO:
7  Q  Do you recall that it required her to take
8  certification training, contract certification
9  training, to do this work?
10  A  I do recall she did some contract work.
11  Q  At your request?
12  A  Yes.
13  Q  She had to manage the funding
14  responsibilities associated with the contract
15  function?
16      MS. RUSSELL: Objection to the extent that
17  assumes facts not in evidence.
18      THE WITNESS: In doing the contract work
19  that I recall, she would have had to do funding as a
20  contracting officer.
21      BY MR. SHAPIRO:
22  Q  In fact, do you recall asking Rebecca Woods

Page 71

1  to take over the direct core program activities to
2  relocate that to Region 8? You were working with
3  Mr. Ellis on that, but he didn't have contract
4  training, so you asked Rebecca to take that over?
5      MS. RUSSELL: Objection to the extent that
6  it assumes facts not in evidence. You can answer if
7  you understand the question.
8      THE WITNESS: Restate that, please.
9      BY MR. SHAPIRO:
10  Q  Do you recall transferring to -- asking Ms.
11  Woods to develop a program, a project, to direct core
12  program activities to a location in Region 8? This
13  was a project you were working with Ellis on.
14  A  I recall having her doing the contracting
15  officer responsibilities.
16  Q  Because Ellis wasn't qualified; correct?
17      MS. RUSSELL: Objection to the extent that
18  it assumes facts not in evidence.
19      THE WITNESS: Ellis wasn't a contracting
20  officer.
21      BY MR. SHAPIRO:
22  Q  Neither was Rebecca Woods but she had the

Page 72

1  training; correct?
2  A  She did take some training.
3  Q  She was qualified to do it; correct?
4  A  She was qualified.
5  Q  Ms. Woods while under your supervision also
6  participated in TSCA Section 8(e) programs; correct?
7  A  TSCA Section?
8  Q  8(e).
9  A  She did.
10  Q  And TSCA Section 12(d) programs?
11  A  I believe that's correct.
12  Q  As well as EPCRA programs?
13  A  Not under my supervision.
14  Q  No, but she did participate in the other
15  branch; right?
16  A  Correct.
17  Q  It's true, isn't it, that at no time while
18  under your supervision did Rebecca Woods receive a
19  performance appraisal of less than "exceeds
20  expectations?"
21      MS. RUSSELL: Objection; relevance.
22      BY MR. SHAPIRO: