Exhibit 3

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 19

## Declaration of Gerald Stubbs

I, Gerald Stubbs, make the following statement, with knowledge that any material false representation on my part, would subject me to a charge of perjury.

1.      I presently serve as the Branch Chief of the Western Branch of the Toxics and Pesticides Enforcement Division (TPED) in the Office of Civil Enforcement (OCE) in the Office of Enforcement and Compliance Assurance (OECA). I have served in such capacity since approximately 1994, and at all times relevant to Ms. Woods claims of discrimination/retaliation herein at issue.

2.      My immediate supervisor at all times relevant to Ms. Woods' EEO complaints herein at issue was Ann Pontius, the former TPED Division Director, and my second line supervisor throughout that same time frame, and still as of today, was Walker Smith, the OCE Office Director.

3.      Immediately prior to OECA's reorganization in 1994, I served as Chief of the Case Development Branch in the Office of Compliance Monitoring. I had been serving in such capacity from about 1986, and I first began supervising Ms. Woods in the late 1980's/early 1990's when she transferred into my office from another Assistant Administratorship, the Office of Prevention, Pesticides, and Toxic Substances (OPPTS).

4.      At one point during Ms. Woods' tenure in the Case Development Branch, she served as a Team Leader, and I regarded favorably her performance in that capacity. Overall, Ms. Woods did good work under my supervision in the Case Development Branch, and I was sufficiently satisfied with her performance and it is my recollection that I routinely rated her as Exceeds Expectations, the second highest rating on the five point scale, then in existence.

5.      In 1994, OECA underwent a reorganization and the attorneys and technical personnel were merged, with all offices having a mix of such employees. The reorganization led to some significant competition among personnel, and it was my observation that Ms. Woods did not flourish in this new environment. In my judgment, she was not particularly competitive and she seemed to lack the initiative of some of the more aggressive employees.

6.      Because Ms. Woods did not seem too energized with respect to her work in the Western Branch of TPED, I discussed with her the possibility of a detail to another office. I felt, as did Carl Eichenwald, the Eastern Branch Chief, that a change of venue might rejuvenate her.

7.      Ms. Woods accepted the detail assignment and served for some time in OPPT before returning to TPED and subsequently transferring from the Western to the Eastern Branch, where she then came under the immediate supervision of Mr.

Eichenwald.

8.     Because of a numerical imbalance on our staffs and the fact that some of my personnel were performing work that fell within Mr. Eichenwald's bailiwick, certain TPED personnel were shuffled between our branches. Ms. Woods was reassigned in such manner, but also because it seemed to me and Mr. Eichenwald that she needed to do something different to reenergize herself.

9.     Brian Dyer, who had been an immediate subordinate of mine from about 1991, was another Western Branch employee who was transferred to the Eastern Branch as part of the intra-TPED shuffling.

10.     Historically in OECA, for as long as I can recall, there has been a fixed upper bound on the number of technical personnel who could occupy GS-14 slots or higher within the AAship. Periodically, and relatively rarely, an office is authorized to make an accretion of duties promotion to a deserving GS-13 technical candidate. TPED's first opportunity to make such a promotion during the reign of Ann Pontius, the past Division Director, resulted in the selection of Yvette Hellyer, a Hispanic female over forty (40) years old. Ms. Hellyer was chosen by consensus ahead of Messrs. Dyer and Ellis, who were also candidates for promotion at that time.

11.     With respect to the selection process about which Ms. Woods complains, Ms. Pontius, Carl Eichenwald, and myself were the TPED managers who determined that Messrs. Dyer and Ellis should be the TPED employees who were recommended for promotion to Walker Smith, the Office Director. Stephanie Brown, a new Associate Division Director at the time of the selection process herein at issue, participated in our discussions, but she did not play a meaningful role, insofar as she had no real familiarity with the promotion candidates, having only recently come to TPED from another AAship.

12.     As both Mr. Dyer's and Mr. Ellis' immediate supervisors for some considerable time (Mr. Ellis has been under my immediate supervision since 1986 and Mr. Dyer reported to me from 1991 into the late 1990's), I was intimately familiar with these individuals' qualifications. I regarded Mr. Ellis as a top shelf promotion candidate, insofar as he has always been a workhorse, taking on a large volume of, as well as high profile, cases, and taking initiative, working independently, and exhibiting the knowledge and expertise that one would expect to find in a GS-14. My experience with Mr. Dyer, while more limited, was similar, that is he had impressed me as being also in the nature of a go-getter; and my discussions with Mr. Eichenwald persuaded me that Mr. Dyer was in Mr. Ellis' class.

13.     By the time of the early calendar year 2004, non-attorney GS-14 selection process that Ms. Woods challenges as discriminatory, I had had substantial opportunity to assess the relative promotion merits of everyone in my Branch. In addition, because some of my Branch personnel had been in Mr. Eichenwald's Branch and vice-a-versa, he and I had some reasonable familiarity with the promotion worthiness of individuals in our sister Branch, in particular, in my

case, Brian Dyer and Rebecca Woods.

14.    It is my understanding that Walker Smith, the OCE Office Director, instructed the Division Directors to identify those non-attorney GS-13 personnel whom they considered to be their most deserving promotion candidates. Pursuant to such instruction, myself, Carl Eichenwald, Ann Pontius, and Stephanie Brown caucused and concluded that Brian Dyer and Tony Ellis were the two best qualified TPED employees. As noted previously, Ms. Brown did not play too significant a role in the evaluation process.

15.    The TPED management team noted in paragraph 14, above, considered all six of the Division's promotion eligible non-attorney GS-13s, including Ms. Woods, who we ranked by consensus as the fourth best candidate. Ms. Pontius, Mr. Eichenwald, and myself recognized Messrs. Dyer and Ellis as the run-away most deserving promotion candidates.

16.    Because I have long made it a habit to allow staff to brief the Division Director on high visibility matters, and it is my understanding that Mr. Eichenwald and his predecessor have acted similarly, Ms. Pontius would have had a sense of who in TPED historically had been shouldering the most significant caseload and been most integrally involved in developing effective enforcement initiatives. Thus, Ms. Pontius would have had a good opportunity to observe Messrs. Dyer and Ellis, and she would have had a defensible basis upon which to conclude that they were the Division's top promotion candidates. It is my impression that Ms. Pontius decided that Messrs. Dyer and Ellis were TPED's most deserving technical personnel, based on her independent assessment of their relative merits vis-a-vis the other candidates, including Ms. Woods.

17.    In evaluating who among the TPED non-attorney GS-13 staff was the most qualified for a promotion, I considered a number of factors such as the level of independence such individuals exhibited. I also regarded initiative and the breadth and depth of expertise as critical factors. I focused, as well, on the nature of the cases, giving more weight to significant dollar amount dispositions and cases predicated on creative enforcement theories. Across the board, in my judgment, Messrs. Dyer and Ellis stood out as the most impressive promotion candidates.

18.    I understand that Ms. Woods has questioned the integrity of the selection process, insofar as TPED did not post the GS-14 "jobs" and solicit applications. It is my understanding that TPED did not have authorization to hire new personnel, and that announcing a job publicly and soliciting interest from a community outside of TPED would have been inappropriate in such circumstances. That is, it is my understanding that an Agency cannot post a broad job announcement with knowledge that everyone other than a select few exclusively internal applicants is ineligible. Acting in such a manner would give the appearance of a sham announcement.

19.    I absolutely did not discriminate against Ms. Woods or any other candidate in the

GS-14 selection process that resulted in Messrs. Dyer and Ellis being promoted.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on January 3, 2006.

Gerald Stubbs, Branch Chief
Western Branch
Toxics and Pesticides Enforcement Division
Office of Regulatory Enforcement

4