Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

```
- - - - - - - - - - - - - - - - - x
                                   :
REBECCA WOODS,                     :
                                   :
       Complainant,                :  EEOC NO. 100-2005-00418X
                                   :
       v.                          :  Agency No. 2004-0042-HQ
                                   :
MICHAEL LEAVITT, Administrator,    :
Environmental Protection Agency,   :
                                   :
       Agency.                     :
                                   :
- - - - - - - - - - - - - - - - - x
```

Washington, D.C.

Wednesday, November 23, 2005

Deposition of

ANNE PONTIUS

a witness of lawful age, taken on behalf of the Complainant

in the above-entitled action, before Andrew N. Schachter,

Notary Public in and for the District of Columbia, in the

offices of Swick and Shapiro, P.C., 1225 Eye Street,

Northwest, Suite 1290, Washington, D.C., 20005, commencing at

11:07 a.m.

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20     41

1  the selection of anybody for a grade or a position when

2  you were associate director of assistant director of

3  TPED?  Either the selecting official or recommending

4  official, someone who helped interview, an advisor,

5  anything like that?

6       A    I don't remember.  I don't think so, but I may

7  have, but I don't remember.

8       Q    Okay.  I am particularly interested in GS-14's

9  in the environmental protection specialist field.  Now

10 this would be above the career ladder, correct?

11      A    Yes.

12      Q    Okay.  Now in the career ladder when somebody

13 gets in -- and you have been on a career ladder

14 yourself, haven't you?

15      A    Yes.

16      Q    Is that a yes?

17      A    Yes.

18      Q    Okay.  So in a career ladder, you don't

19 actually compete for grades, do you?

20      A    No.

21      Q    What happens is you -- there may be many

22 things that enter into it, they may not have a budget

1   for promotions, but in the career ladder, you don't

2   compete against each other for grades.

3       A    Right.

4       Q    Once you are eligible and qualified to do the

5   work and if there is money available, you get promoted

6   without competition, correct?

7       A    Yes.

8       Q    That is what a career ladder is in fact.

9       A    Yes.

10      Q    It is an exception to the competitive rules of

11  promotion, correct, because you are on this career

12  path, this ladder that climbs up.

13      A    Right.

14      Q    Not automatically.  It is not like a step

15  increase with satisfactory performance in time you get

16  a step.  It is still better responsibility, more job

17  knowledge, but you don't compete head to head with

18  anybody for it, correct?

19      A    Correct.

20      Q    Okay.  Now above the career ladder, in other

21  words, a non ladder promotion, is competitive, correct?

22      A    It can be an advertised or it can be

Woods v. Johnson,
Civil Action No. 06-1460(HHK)     43
Ex. 20

1   competitive in a more informal way.

2        Q    Okay.  Competitive in a more informal way.

3   The advertised requirements, do you know where they

4   come from?  In other words, what rules are being

5   followed when you are promoting somebody or --

6        A    Well, we have got our personnel rules.

7        Q    Personnel rules of EPA?

8        A    Well, there are certain rules that flow from

9   Office of Personnel Management.

10       Q    The U.S. OPM.

11       A    Yes.

12       Q    Okay.  So there are also regulations, correct,

13  and there is a statutory scheme, isn't there?

14       A    Mm-hmm.

15       Q    Is that -- it is better to say yes and no.

16       A    Oh, I'm sorry.

17       Q    Because let me explain something.  See, we

18  like this guy, the court reporter, he is a real nice

19  guy, but we don't trust him to make interpretations.

20  So we don't like to take head shakes, we don't like to

21  take mm-hmm, uh-uh because it sounds too close and he

22  will have to interpret.  We would rather have you say

1    so that he just reports.  All right?

2         A    Understood.

3         Q    It is an obvious problem that everybody has.

4    So as I said, there is a statutory scheme, correct?

5         A    Yes.

6         Q    And there is government wide regulations by

7    OPM.

8         A    Yes.

9         Q    And then there is interpretations of those

10   regulations by EPA.

11        A    Yes.

12        Q    And that is the rule book for following

13   federal personnel procedures, correct?

14        A    Yes.

15        Q    Okay.  So you said that there is -- career

16   ladders are not competitive, right?

17        A    That is right.

18        Q    But above the career ladder, it is

19   competitive, right?

20        A    It is competitive in the sense that there

21   would be certain people that are eligible to be

22   considered.

1    Q    Yes, indeed.  The first thing you have to be

2  in a competitive selection is you are not considered if

3  you are not eligible, correct?

4    A    That is correct.

5    Q    So for example, if you are a GS-12

6  environmental specialist and there is a GS-14

7  environmental specialist vacancy, you can't be

8  considered for it.

9    A    That is correct.

10    Q    Because you are not eligible because you are

11  not in the lower grade, the next lower grade.

12    A    That is correct.

13    Q    In fact, if you were just in that lower grade,

14  that 13 for six months, you wouldn't be able to apply

15  for that job and you wouldn't be able to be considered

16  for the 14 job because you have to be in the next

17  lowest grade for at least a year; is that correct?

18    A    That is correct.

19    Q    That is what we mean by eligibility, correct?

20    A    Correct.

21    Q    And there are other things that are

22  eligibility too.  For example, you have to be a U.S.

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20

46

1    citizen to get a federal job, right?

2        A    Yes.

3        Q    Okay.  Also there are certain other things.

4    For example, it could be that just to get into a job

5    you have to have certain qualifications, not grade, but

6    qualifications.  For example, you can't get a legal job

7    unless you are a lawyer, correct?

8        A    That is right.

9        Q    You can't have an attorney advisor position

10   unless you are a member of a bar.  It is required,

11   right?

12       A    Yes.

13       Q    And those rules come down from OPM.

14       A    I assume.

15       Q    Okay.  But there are rules.

16       A    There are rules.  There are personnel rules.

17       Q    Now eligibility means that you are

18   fundamentally able to apply and be considered, right?

19       A    Yes.

20       Q    Qualified means that you meet the basic

21   qualifications for the job substantively.

22       A    Yes.

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

1      Q    Right. And competition means that -- fair

2 competition means that everybody has to be considered

3 under the same rules.

4      A    Yes.

5      Q    Right? Okay. All right. Now I was talking

6 about 14 environmental protection specialist in TPED.

7      A    Yes.

8      Q    Did you ever participate in the selection of a

9 14 or the promotion of someone to a 14 as an

10 assistant -- associate director under Jesse

11 Baskerville?

12      A    I may have. I don't remember.

13      Q    Okay. Who was the person that you might be

14 thinking of that got the promotion? That is probably

15 the easiest way to --

16      A    Well, that is -- I am trying to go there.

17      Q    All right. The one you are thinking of is

18 who?

19      A    Well, I am not thinking -- I am just thinking

20 there might be that I am not remembering.

21      Q    Okay.

22      A    So that is why I am --

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20

48

1     Q     Did you --

2     A     There is no person in my mind right now.

3     Q     Good.   Did you participate in the promotion of

4  a 14 when you were the director or acting?

5     A     Yes, I did.

6     Q     Okay.   The first one that you did was who?

7     A     Yvette Hellyer.

8     Q     Yvette Hellyer?

9     A     Yes.

10    Q     That is H-e --

11    A     -- l-l-y-e-r.

12    Q     And is she a lawyer or an environmental

13  protection specialist?

14    A     She is a biologist.

15    Q     Biologist.

16    A     I believe.

17    Q     A biologist.   So she is not an environmental

18  protection specialist or an attorney.

19    A     She is part of the technical staff.

20    Q     Technical staff.   Now the technical staff

21  means no specialized scientists or does that include

22  lawyers?

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20

49

1      A      Technical staff, I would say, is the

2  non-attorneys.

3      Q      Non-attorneys, okay.

4      A      That is the broad interpretation.

5      Q      Now what series is she in?  Is she in a

6  different series from environmental specialist?

7      A      I believe she is.

8      Q      Okay.  So a biologist is a special series.  It

9  is a scientific series.

10     A      Okay.

11     Q      Okay.  Is that a yes?

12     A      I believe so.

13     Q      Okay.  So what is the career ladder for that

14 series?  Does it go up to 14?

15     A      I don't know.

16     Q      Was anyone else -- were you the selecting

17 official for that?

18     A      I was.

19     Q      Okay.  So was there anybody else?  Did you

20 have a vacancy announcement for that?

21     A      I was given a one technical 14 position and I

22 was asked to look at all of my eligible GS-13 technical

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

1    staff.

2         Q    Technical staff being everybody --

3         A    Any non-attorney.

4         Q    Non-attorney.  So you couldn't make a --

5         A    At the GS-13 level.

6         Q    So you couldn't make an attorney who was a 13

7    a 14 under this authority.

8         A    No.

9         Q    You -- unless they were willing to leave being

10   an attorney.  Could they have done that?

11        A    I suppose.

12        Q    Okay.  But you were told that you should look

13   at all your eligible 13's.

14        A    Yes.

15        Q    And how did you know if somebody was eligible?

16        A    I have a list of people --

17        Q    Whose getting grade --

18        A    Their grade and their level and how long.  Or

19   I had a list.

20        Q    Okay.  Did you interview them?

21        A    No.

22        Q    No.  All right.  And you decided that Hellyer

1    was the one you wanted to give the 14 to.

2         A    Yes.

3         Q    And so you --

4         A    Not on my own.  I had input from other

5    managers.

6         Q    Who did you have input from?

7         A    My associate director and the two branch

8    chiefs.

9         Q    And who was your associate director?

10        A    Stephanie Brown.

11        Q    Okay.  She is a lawyer.

12        A    She is a lawyer.

13        Q    And who were the two branch chiefs?

14        A    Gerry Stubbs and Carl Eichenwald.

15        Q    Okay.  And they interviewed the candidates as

16   well?

17        A    No.  There was no interview.

18        Q    So you could have chosen anybody in either

19   branch who was not a lawyer who was an eligible 13

20   person.

21        A    My candidate pool was any non-attorney GS-13.

22        Q    Did anybody know that there was a competition

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20                    52

1    going on?

2         A    No.  I mean, the managers in the Office of

3    Regulatory Enforcement.

4         Q    Right.  Did anybody feel out any of the

5    eligible pool as to whether they were staying, whether

6    they were looking for other jobs, whether they were

7    planning to leave?

8         A    No.

9         Q    Okay.  So and who told you that you had this

10   14?

11        A    That would have -- it probably was Walker

12   Smith.

13        Q    And Walker Smith is whom?

14        A    She is the director of the Office of Civil

15   Enforcement.

16        Q    So she was your boss.

17        A    Yes.  I mean, it may have been David Nielsen,

18   her deputy at the time.  One or the other.

19        Q    And so you sat down with Carl, Gerry and --

20        A    Stephanie.

21        Q    -- Stephanie?

22        A    Mm-hmm.

1    Q    And you also then discussed who they -- who

2    everybody thought should get the 14.

3    A    Yes.

4    Q    You said these are the people that could get

5    it.  Who do you think should get it and was there --

6    A    We asked each branch chief who in their branch

7    they would recommend.

8    Q    They would recommend.  And who did Carl

9    recommend?

10   A    Brian Dyer.

11   Q    Brian Dyer.  And was Hellyer in his branch or

12   is she in --

13   A    She was in Gerry's branch.

14   Q    Okay.  And who did Gerry recommend?

15   A    Yvette Hellyer.

16   Q    All right.  And who did you consider?

17   A    I considered -- I mean, I looked at everybody

18   on the list.

19   Q    But you considered those two.

20   A    Well, I took -- yes, I mean, there -- well --

21   Q    They were your two best qualifieds.

22   A    Well, there was one other person that I

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20                    54

1    actually considered.

2        Q    Who is that?

3        A    Tony Ellis.

4        Q    Tony Ellis.  Okay.  And --

5        A    The top three candidates.

6        Q    But --

7        A    But I was only filling one slot.

8        Q    Right, but Ellis was working for Stubbs.

9        A    Yes.

10       Q    And Stubbs recommended Hellyer not Ellis.

11       A    Well, he had -- yes, I mean, I think in terms

12   of --

13       Q    So how did you come to consider Ellis if

14   Stubbs said Hellyer is the person?

15       A    Well, we just had a conversation about all the

16   people that were best qualified.

17       Q    And those were the three people that you --

18       A    Of the people, those were the top three people

19   and I think at the time I had six people that were

20   eligible.

21       Q    And who were the other eligibles?

22       A    Rebecca Woods was one of the eligible, Randy

Woods v. Johnson,
Civil Action No. 06-1460(HHK)    55
Ex. 20

1   Morris and Beth Burchard.

2       Q    And Morris is in Washington?

3       A    He is in Denver.

4       Q    He is in Denver.  Who else is in Denver?

5       A    Bill Palmer.

6       Q    Who supervises out in Denver?

7       A    Gerry Stubbs.

8       Q    So he supervises from a distance.

9       A    He does.

10      Q    So Rebecca Woods was a 13?

11      A    Yes.

12      Q    And so was Morris?

13      A    Yes.

14      Q    And so was Burchard.

15      A    Yes.

16      Q    Are they still?

17      A    Yes.

18      Q    All GS-13's.

19      A    Yes.

20      Q    Okay.  And were they all -- they were all

21  eligible.  Were they all qualified?

22      A    I would say the are all qualified.

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20
56

1      Q      So they are both eligible and qualified.

2      A      Mm-hmm.  Yes.  Sorry.

3      Q      All right.  So you considered the two people

4  who the branch chief said each recommended and

5  Mr. Ellis as well.

6      A      Yes.

7      Q      Did you ask Stubbs about Ellis as compared to

8  Hellyer and why he was recommending Hellyer instead of

9  Ellis?

10     A      Well, it was more a group discussion about we

11  had one opportunity to promote somebody.  Who should we

12  promote.  We typically had group discussions as a

13  management team and so we came to a group consensus

14  that Yvette was the --

15     Q      Person most deserving.

16     A      Person that, yes, most deserving that we would

17  put forward.

18     Q      And you were the selecting official you said.

19     A      Well, I have --

20     Q      You might have --

21     A      I had discussions with my office director and

22  my deputy office director.

1    Q    Well, you had to get their approval.

2    A    I did.

3    Q    They were the approving official, but you were

4    the selecting official.

5    A    I think that is how it worked.

6    Q    Okay.  So why not a formal application process

7    where there is aboveboard competition open for anybody

8    to see, personnel is involved, panelists to make these

9    cuts and interviews.  Why not the formal process?

10    A    I believe it is a management -- management's

11    prerogative to --

12    Q    Management's prerogative.

13    A    -- evaluate their employees and, you know,

14    select --

15    Q    Above their career ladder just like that.

16    A    That is how the office is operated, the Office

17    of Regulatory Enforcement when there was -- they are

18    very rare to get a 14 above the career ladder, a

19    technical 14.

20    Q    Even more reason to have a transparent,

21    aboveboard competition for these rare plums.

22        MR. WINICK:  Objection.  Is that a question?

1    A    Absolutely.

2    Q    I see.  Good.  You still would have wanted a

3    14.

4    A    Oh, absolutely.

5    Q    For your people.

6    A    Absolutely.

7    Q    I see.  And two if you could get them?

8    A    As many as I could get.

9    Q    Sure.  Because your people were doing good

10   work as --

11   A    Yes.  Yes.

12   Q    And were deserving of 14's.  Not all of

13   them --

14   A    Yes.

15   Q    -- but more than just those two.

16   A    In general, yes.

17   Q    Okay.  Including Rebecca.

18   A    I think so.

19   Q    Well, it is --

20   A    I am not her, you know, supervisor.

21   Q    But it is your view.  I mean, if you had a 14

22   to give.

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

Woods v. Johnson,
Civil Action No. 06-1460(HHK)
Ex. 20                                   82

1      A    Well, I would, you know, look at everybody

2   and --

3      Q    But in general, you think you should get

4   grades for your people.

5      A    I generally would like to get the 14's for my

6   technical people.

7      Q    Mm-hmm.  So -- all right.  So let's deal with

8   these 14's.  Ultimately you got them.

9      A    I did.

10     Q    Okay.  And who told -- who is Smith's --

11  Ms. Smith's associate or deputy director?

12     A    It is Randy Hill.

13     Q    Randy Hill.

14     A    Yes.

15     Q    At the time it was Randy Hill?

16     A    Yes.

17     Q    Okay.  And the organization above Ms. Smith

18  is --

19     A    Phyllis Harris would be the deputy assistant

20  administrator and there has been several different

21  assistant administrators.  J.P. Suarez -- probably

22  during this time frame it was J.P. Suarez.

Woods v. Johnson,
Civil Action No. 06-1460(HHK)   83
Ex. 20

1    Q    So you were the selecting official for these

2    14's?

3    A    I believe so, yes.

4    Q    Okay.  And but it had to be approved.

5    A    Absolutely.

6    Q    Just like any promotion --

7    A    Absolutely.

8    Q    -- has to be approved.  With the exception of

9    career ladder promotions.

10   A    Yes.

11   Q    They don't have to be approved.

12   A    Right.

13   Q    Okay.  And that is not actually called a

14   selecting official, is it, it is just --

15   A    Well, career ladder, that is just --

16   Q    It is not a selection.

17   A    It is not a selection.

18   Q    Because it is not competitive.

19   A    That is just part of the career --

20   Q    Right.

21   A    Whatever the --

22   Q    The path.

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

1    A    The path to the highest level.

2    Q    Right.  All right.  So we have these two 14's

3    that you have now gotten and you have selected these

4    folks for.  Did you tell them that you selected them?

5    A    After the paperwork was -- after it was

6    approved -- after it had gone through the process once

7    I found out that it was --

8    Q    That it was definitely going.

9    A    Well, no, it was -- I think I waited until it

10   was signed off in personnel.

11   Q    By whom?  Who signed off on it?

12   A    Whatever the personnel process, the steps that

13   they have to go through.

14   Q    Who would you deal with in personnel, in HR,

15   on these promotions?

16   A    I didn't deal with anybody in personnel.  We

17   have --

18   Q    Who is your servicing personnel person for

19   TPED?

20   A    Well, I use somebody in the Office of Civil

21   Enforcement.

22   Q    Who is that?

Woods v. Johnson,
Civil Action No. 06-1460(HHK)    85
Ex. 20

1       A      Kia Logan.

2       Q      Okay.  But who is in HR?  Who services you in

3   HR?  You don't know.

4       A      I don't know the name.

5       Q      Okay.  So Kia Logan is the person that

6   coordinates for you.

7       A      Well, that is the person that I always asked.

8       Q      Okay.  And what is her position?

9       A      She is the equivalent of an office manager,

10  but that is not her title.

11      Q      Administrative officer?

12      A      Well, she is the team leader for a resource

13  management team in the Office of Civil Enforcement.  So

14  people that handle personnel actions work for -- report

15  to Kia and her team.

16      Q      Okay.  So let's get it back.  You waited until

17  this had been signed off by HR, but you don't know who

18  does that in HR, but you were told that it was signed

19  off and that is when you informed Mr. Ellis and

20  Mr. Dyer that they were getting promoted?

21      A      We had to sign paperwork so that it was going

22  to be a done deal and then I went with Carl to tell

Woods v. Johnson,
Civil Action No. 06-1460(HHK)    86
Ex. 20

1    Brian and I went with Gerry to tell Tony.

2         Q    Okay.  And that is the first they knew they

3    were being promoted?

4         A    That was the first they knew.

5         Q    So it came as a surprise.

6         A    Absolutely.

7         Q    And they were delighted.

8         A    They were.

9         Q    Thanked you profusely.

10        A    They thanked me.

11        Q    Right, but they hadn't an inkling of this

12   beforehand.

13        A    No.

14        Q    Is that correct?

15        A    That is correct.

16        Q    Okay.  Good.  And this would have been when,

17   January also?

18        A    You know, I don't -- that may have been when

19   it was approved.  I don't remember when it was approved

20   and when -- there is a certain processing time and I

21   haven't looked at the paperwork and I don't remember

22   when --

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

Woods v. Johnson,
Civil Action No. 06-1460(HHK)    87
Ex. 20

1      Q      Would you have a calendar, which --

2      A      Somewhere I would have --

3      Q      -- would have an entry saying, "Went with Carl

4    to Dyer promotion?"

5      A      No, no.  I wouldn't have anything like that.

6      Q      Met with Dyer promotion.

7      A      No.  I would just have to look at the

8    paperwork date, whatever the date was, and I don't know

9    if I -- when I would have gotten it.  It would have

10   been somewhere in that time frame.  Whenever I got it

11   back is the day it sent.

12     Q      But I want to be a hundred percent sure.

13   Mr. Ellis was surprised --

14     A      Mr. Ellis was surprised.

15     Q      -- that there was a promotion and that he got

16   it and Mr. Dyer was -- in other words, there was no

17   hint that there -- no announcement to the staff that

18   there was going to be these 14's.

19     A      That is correct.

20     Q      Until -- and they didn't know anything about

21   it until you said you got it.

22     A      That is correct.

**Diversified Reporting Services, inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

Woods v. Johnson,
Civil Action No. 06-1460(HHK)    88
Ex. 20

1    Q    Okay.  And you were the one that told each of

2    them in the company of their --

3    A    In the company of their --

4    Q    -- branch chief.

5    A    That is correct.

6    Q    Their own respective branch chief.

7    A    That is correct.

8    Q    Okay.  So Eichenwald didn't go with you to see

9    Ellis and Stubbs didn't go with you to see Dyer.  They

10   each went to their own person.

11   A    That is right.

12   Q    Good.  Now about these 14's.  Were these --

13   these were just grade promotions.

14   A    They were accretion of duty promotions.

15   Q    I understand you say that.  Do you know what

16   accretion of duty means?

17   A    Well, it is demonstrating that someone is

18   operating at a higher grade level.

19   Q    Was there a -- did you do a desk audit --

20   A    No.

21   Q    -- of either of these people's jobs?

22   A    No.

Woods v. Johnson,
Civil Action No. 06-1460(HHK)    89
Ex. 20

1     Q    Okay.  Were these jobs new jobs?  The 14's

2  were not new jobs.

3     A    They were not new jobs.

4     Q    They were just promoted in their current jobs

5  to a 14.

6     A    That is right.

7     Q    Because they were working at a higher level.

8     A    That is right.

9     Q    Okay.  It is true, isn't it, that other people

10  were also working at a higher level.  You just don't

11  have 14's for them.

12     A    I would say that is true.

13     Q    Rebecca among them.

14     A    That is probably true.

15     Q    Well, that was your view at -- when you were

16  there, correct?

17     A    Well, I think there is some other people --

18     Q    Yes, I didn't say only Rebecca.

19     A    Yes.

20     Q    I said but Rebecca is among them.

21     A    She probably would be among them.

22     Q    Okay.  You sign off on all bonuses at the end

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200