UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| REBECCA L. WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 06-1460 HHK |
| | ) | |
| STEPHEN L. JOHNSON, | ) | |
| Administrator, Environmental | ) | |
| Protection Agency, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT

Rebecca Woods contends that she was denied a promotion to a GS-14 Environmental

Protection Specialist position in the Toxics and Pesticides Enforcement Division (TPED) of the

Environmental Protection Agency (EPA) based on her age and sex.  TPED has continued to pay

and grade Ms. Woods as a GS-13 employee despite the fact that her duties and responsibilities

have been the equivalent to those of a Grade 14 employee since 1995.  TPED management has

refused to give Ms. Woods an accretion of duties promotion and, when a vacancy became

available, secretly promoted two younger male employees with far less knowledge, skills and

abilities than Ms. Woods.  Indeed, the evidence shows that Ms. Woods' supervisor, who favored

younger male employees and commented that Ms. Woods was from a "different era with

different work ethics," violated EPA's merit promotion policy by preselecting the younger males

before the Grade 14 vacancies became available.  Then, when the Grade 14 vacancies became

available, instead of following EPA's policy requiring competitive selections based on merit, the

younger males were promoted without competition; Ms. Woods was denied an opportunity to compete against them.  After Ms. Woods complained about this discriminatory non-promotion, her supervisor retaliated against her by refusing to act on her request to work from home one day a week for more than 84 days, although EPA policy required that such requests be answered within 15 calendar days and this benefit was routinely granted to other employees who had not complained of discrimination.

In its motion for reconsideration, rather than addressing the issues of fact raised by Ms. Woods in her opposition to summary judgment, the EPA merely reiterates its alleged non-discriminatory reason for failing to promote Ms. Woods.   Thus, the EPA has not defeated Ms. Woods' argument that a reasonable jury could infer pretext from the false statements of the deciding official.  As noted in her opposition to summary judgment, there are significant issues of fact surrounding the veracity of the explanations provided by the Agency for its actions.  First, there is evidence that Ms. Woods was working at the GS-14 level.  She independently ran two programs and served as a National Level Expert in all of the three statutory areas enforced by TPED, an important qualification for the promotion at issue that neither of the younger male selectees possessed. Furthermore, in 1995, her supervisor requested her promotion to a Grade 14 based upon an accretion of duties.  At the time, she was told promotions had been "frozen."

There is also evidence that the responsible EPA managers have falsely claimed that they could not allow competition for the promotions, as required by the EPA Merit Promotion Selection Process.  EPA claims that it could not allow competition for the GS-14 positions because due to a hiring "freeze," it could not post a Vacancy Announcement soliciting applications from outside the EPA which would cause the EPA to exceed authorized staffing

2

levels.  However, the EPA policy allows the competitive area for promotions to be restricted to the EPA Division level which would have limited the competition to TPED employees.  Limiting the competitive area to TPED employees would not have increased the number of EPA employees, but it would have allowed Ms. Woods to compete for the promotions.

Because Ms. Woods has adduced sufficient evidence for a reasonable jury to conclude that the reasons proffered by the Agency for failing to promote her are pretextual, Defendant's motion for reconsideration on this claim should be denied.  In addition, Defendant has failed to meet the legal standard for reconsideration of the Court's Order.  As Defendant has not moved for reconsideration regarding Ms. Woods' retaliation claim, all of Ms. Woods' claims should proceed to a jury.

ARGUMENT

I.      **Legal Standard.**

A court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C.2003).  Instead of addressing how it meets this standard, Defendant simply rehashes the arguments that this Court addressed fully at Oral Argument and rejected.   Accordingly, Defendant's motion should be denied.

II.     **Defendant's Dispute With Ms. Woods' Evidence of Pretext Does Not Justify Reconsideration of Summary Judgment.**

Defendant has not challenged Ms. Woods' prima facie case.  Rather, defendant argues that Ms. Woods cannot show pretext because she has not shown that she was "demonstrably

3

better qualified than messrs. Dyer and Ellis." Motion for Reconsideration at 11. Under the

relevant case law, however, demonstrating superior qualifications of the plaintiff is only one way

to attack a qualifications-based explanation for a non-promotion. As the D. C. Circuit Court

stated in *Aka v. Washington Hospital Center*:

> A plaintiff attacking the qualifications-based explanation is of course not limited
> to comparing his qualifications against those of the successful candidate. The
> plaintiff can instead seek to expose other flaws in the employer's explanation. For
> example... a plaintiff can attempt to show that the employer's explanation
> misstates the candidate's qualifications.

156 F.3d 1284, 1295 (D.C. Cir.1998) (*en banc*) 156 F.3d at 1295. The Court went on to explain

"adequate evidence of this type may suffice to permit the trier of fact to infer that the employer's

explanation is incorrect or fabricated, and thus to infer discrimination." *Id.* Furthermore, as the

Supreme Court held in *Reeves v. Sanderson Plumbing,* "the trier of fact can reasonably infer from

the falsity of the explanation that the employer is dissembling to cover up a discriminatory

purpose," particularly because "the employer is in the best position to put forth the actual reason

for its decision." 530 U.S. 133, 147 (2000); *see also Salazar v. Washington Metropolitan Transit

Authority*, 401 F.3d 504, 511 (D.C. Cir. 2005) (finding questions about whether the employer

provided fairly administered promotion selection process, and whether the failure to promote on

grounds that successful candidate was more qualified precluded summary).

Because Ms. Woods has suceeded in raising an inference of pretext by demonstrating that the

decisionmakers misstated her qualifications and provided a false explanation for failing to hold a

competitive selection, it was not necessary for her to show that she was demonstrably more

qualified.[1]

A.    **There Are Issues of Fact Regarding EPA's Assertion that it Could Not Use the Standard Merit Promotion Process.**

The evidence demonstrates that the EPA selected two younger male GS-13s in the exact same position as Ms. Woods for a promotion to a GS-14 position without following the competitive Merit Promotion procedures in the EPA's Merit Promotion Plan. In doing so, the EPA bypassed a system that provided for a fair and open competitive process for selection and protected against discriminatory animus. PX 18 (EPA Merit Promotion Manual) at 2-1. The EPA, however, has claimed that it could not utilize the standard promotion process because "issuing a job vacancy announcement. . . would have required inviting applications from outside of OCE, [and] was not a viable means of effecting a promotion." PX 23 (Eichenwald Decl.) at ¶¶ 17-18; PX 19 (Pontius Decl. 12/29/05) at ¶ 17. In fact, the EPA's Merit Promotion Manual clearly states that an announcement can limit the applicant pool to "an organizational unit, no less than a division or laboratory, which is considered sufficient to attract at least two highly qualified candidates for promotion consideration." PX 18 (EPA Merit Promotion Manual) at 3-2; *see also* PX 1 at ¶ 17 (after Ms. Woods requested that any GS-14 position available to TPED be competed through an open process, Ms. Pontius assured her "that she could do that"). This means the EPA could have restricted the applicant pool to TPED employees. Other than the bald statement that they could not have a competitive selection, the EPA fails to explain why they did not follow the Merit Promotion procedure by limiting the applicant pool.

---

[1] Plaintiff does not concede the qualifications-based argument as part of her trial strategy. For purposes of this motion, however, plaintiff notes that she has adduced sufficient evidence of pretext through alternative routes.

**B.      There is an Issue of Fact Regarding Management's Current Claim that Ms. Woods Was Not Working at the GS-14 Level.**

In contrast to the two young male selectees, Ms. Woods did have the requisite expertise in all three areas enforced by TPED.  PX 1 at ¶ 15 (indicating that Ms. Woods had expertise in all three of these statutory areas).  *See also* PX 7 (Clark Decl.) at ¶ 3 (stating that Ms. Woods was knowledgeable in all three technical areas).  Indeed, the evidence shows that as early as 1995, Ms. Woods was working at the GS-14 level.  Gerald Stubbs, her then-supervisor, recommended her for a promotion to the GS-14 level based on an accretion of duties.  PX 1 at ¶ 6; PX 17 (Stubbs Depo.) at 64-66 (agreeing that he submitted a request for her promotion in 1995 based upon an accretion of duties).

Furthermore, a comparison of the work performed by Ms. Woods with that of Mr. Ellis and Mr. Dyer raises issues of material fact regarding the Agency's assertion that Mr. Ellis and Mr. Dyer were working at the GS-14 level and Ms. Woods was not.  In addition to having expertise in all three statutory areas, Ms. Woods was serving as the national expert for two regulatory areas.  PX 1 at ¶ 11; PX 6 (Handley Decl.) at ¶ 5 (stating that when he left the EPA Ms. Woods took sole responsibility for a national program initiative).  However, Mr. Dyer and Mr. Ellis only served as experts in partnership with an attorney, and in only one program area.  Additionally, there is evidence that Ms. Woods had served as a Team Leader since 1990, where she provided technical support and expertise to other staff in the office, another responsibility listed as part of the GS-14 PD.  *Compare* PX 3 at 8 ("Acts as leader for a team of Office of Regulatory Enforcement and Office of General Counsel attorneys technical specialists....and other staff. . .evaluates the scope of the problem and develops the team strategy....) *with* PX 1,

6

Attachment A (indicating that as a team leader Ms. Woods reviewed the work her team

members). While Ms. Woods had years of experience in the type of Team Leader position listed

in the GS-14 level, Mr. Ellis and Mr. Dyer did not. In fact each had served under Ms. Woods

when she was team leader. PX 1 at ¶ 4; PX 4 (Ellis Depo.) at 50 (admitting that Ms. Woods

served as his team leader); PX 5 (Dyer Depo.) at 50, 62 (admitting that Ms. Woods was his team

leader at OCM between 1991 and 1994).

### C. A Reasonable Jury Could Find that Mr. Eichenwald's Accusations About Ms. Woods' Performance are Motivated by Discrimination.

There are issues of fact regarding Mr. Eichenwald's claim that he did not promote Ms.

Woods because she "checked in" with him too often or there was some deficiency in one of her

projects. Indeed, Ms. Woods' testimony that she worked on a different floor than Mr.

Eichenwald and weeks would go by when she would not even see him (PX 1 at ¶ 19) directly

contradicts Mr. Eichenwald's claim that she checked in too much. And, Ms. Woods' testimony is

corroborated by that of Mr. Handley, who worked with Ms. Woods for over 6 years, and

observed she worked independently and consulted only when necessary. PX 6 (Handley Decl.) at

¶ 4. As such, this contradictory testimony raises credibility issues for the jury.

A jury could also disbelieve Mr. Eichenwald's assertion that Ms. Woods did not provide

quality work on a document in November of 2003. Ms. Woods previously completed this same

assignment on several occasions over a period of years without criticism and received no critical

feedback on this assignment until months after its completion, *i.e.*, when Mr. Eichenwald was

called on to justify her nonpromotion. PX 11 at 5. Moreover, others who worked on the same

assignment were not criticized for their work. *Id.* Additionally, this single document was only

one of numerous reports Ms. Woods had prepared during the four years Mr. Eichenwald served

as her supervisor, and she had never received any criticism from him about any of her other work

products. *Id.* A jury could therefore conclude that Mr. Eichenwald's claim that Ms. Woods was

not promoted because of a deficiency in her work was contrived by Mr. Eichenwald to cover his

discriminatory motives for the non-selection of Ms. Woods.

Based upon this evidence, a reasonable jury could conclude that Ms. Woods was

performing work at the GS-14 level at the time of her nonselection and that the Agency's

assertion to the contrary is false. The jury could then infer that the EPA's misrepresentation of

Ms. Woods' qualifications, when it claimed that she was not performing at the GS-14 level but

Mr. Dyer and Ellis were, is a pretext for discrimination. *See Fischbach v. D.C. Dept. of

Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Evidence indicating that an employer

misjudged an employee's performance or qualification is, of course, relevant to the question of

whether its stated reason is a pretext masking prohibited discrimination."); *Aka*, 156 F.3d at

1294-95 (plaintiff can establish pretext by showing that the "employer's explanation misstates the

candidates' qualifications").

### D.    A Reasonable Jury Can Infer Discrimination From Mr. Eichenwald's Ageist Remarks and Disparate Treatment.

This Circuit has held that "[e]vidence of discriminatory statements or attitudes on the part

of the employer" may preclude summary judgment in a discrimination case. *Holcomb v. Powell*,

433 F.3d 889, 897 (D.C. Cir. 2006); *Kordel v. Young*, 748 F.2d 701, 710 (D.C. Cir. 1984) (Age-

related comments are "certainly probative of discriminatory motive."); *Cuddy v. Carmen*, 694,

F.2d 853, 858 (D.C. Cir. 1982) (In ADEA cases the plaintiff need only prove that "age made a

difference in the employer's decision."). Here, there is ample evidence of Mr. Eichenwald's ageist and sexist attitude.

Mr. Eichenwald actually commented to Ms. Woods that she and another older female employee were from a "different era with different work ethics." PX 1 at ¶ 22. Indeed, he noted that she and the other older female employee checked in with him more than "younger TPED staffers," an alleged observation that later morphed into one of his reasons for not promoting Ms. Woods. Mr. Eichenwald also laughingly made a comment to Ms. Woods referencing her age. *Id.* From his own words, a jury could conclude that age played a role in Mr. Eichenwald's decision not to recommend Ms. Woods for the promotion.

Similarly, Mr. Eichenwald's favoritism toward his younger male subordinates also supports an inference that a discriminatory animus influenced his decision to promote younger males instead of Ms. Woods. *See Parker v. U.S. Dept. of Housing and Urban Development*, 891 F.2d 316, 321 (D.C. Cir. 1989) (Evidence identified as relevant to demonstrating pretext includes: "(2) facts as to the employer's treatment of plaintiff during the term of employment; and (3) the employer's general policy and practice with respect to employment of minorities and women."); *see also Townsend v. Washington Metropolitan Area Transit Auth.*, 746 F.Supp. 178, 185 (D.D.C. 1990) (concluding that a "discriminatory atmosphere" can be circumstantial proof of individualized discrimination). Mr. Eichenwald consistently favored his younger male employees in TPED over his female employees by including them in meetings and briefings while excluding female staff, more freely allowing male staff to work from home as part of their Flexiplace agreement, assigning female staff more administrative tasks, and being disrespectful to his female Associate Director. PX 1 at ¶¶ 24-27. Ms. Clark, another older female working in

9

TPED, has also stated that Mr. Eichenwald treated her with less respect than younger male employees. PX 7 (Clark Decl.) at ¶ 4 (stating that Eichenwald frequently interrupted her but did not interrupt male employees). Moreover, Mr. Eichenwald explicitly expressed his age-bias. For instance, when his three younger male employees were absent, Mr. Eichenwald sent out an e-mail to the remaining staff in the division (both females and older employees) indicating that the division would "collapse" without these three younger male employees in the office. PX 1, Attachment F. Mr. Eichenwald's statements and disparate treatment are more than sufficient to create an issue of fact regarding his motive for not promoting Ms. Woods.

## CONCLUSION

The EPA has not shown that there has been a change in the law or that new evidence has developed since the Court's decision denying summary judgment or that the Court made a clear error in its first order because, based upon the evidence, a reasonable jury could reject the EPA's claim that Ms. Woods was denied promotion because two younger colleagues were doing grade 14 work and she was not and that due to a hiring freeze the EPA could not allow her to compete for promotion under its Merit Promotion Plan, and conclude that the denial of promotion was the product of discrimination. *Reeves*, 530 U.S. at 148 ( "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). This evidence, coupled with evidence of Mr. Eichenwald's ageist comments and his favoritism of the younger male employees, all raise issues of fact for the jury about whether Ms. Woods was not selected for the promotion because of discriminatory animus. Accordingly, defendant's motion for reconsideration must be denied.

10

Respectfully Submitted,

/s/ David H. Shapiro
DAVID H. SHAPIRO
D.C. BAR No. 961326
ELLEN K. RENAUD
D.C. BAR No. 479376
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W., Suite 1290
Washington, DC 20005

Tel. 202-842-0300
Ekrenaud@swickandshapiro.com

Dated: June 2, 2008

11